# Exhibit 8

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2020-Oct-29 09:30:35
04CV-20-2171
C19WD06 : 107 Pages

## IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS
## CIVIL DIVISION

| | |
|---|---|
| ADVOCACY TRUST, LLC, as Special Administrator and Personal Representative of the Estate of THOMAS ROY RODABAUGH, Deceased, | ) ) ) ) |
| PLAINTIFFS, | ) ) |
| V. | ) ) |
| KIA MOTORS CORPORATION, | ) ) |
| KIA MOTORS AMERICA, INC., | ) ) |
| CRAIN K OF NWA, LLC, d/b/a CRAIN KIA OF BENTONVILLE, d/b/a CRAIN KIA OF NWA, | ) ) ) ) |
| And JOHN DOES 1-3, | ) ) |
| DEFENDANTS. | ) |

**CASE NO.: <u>04CV-2020-2171-6</u>**

**JURY TRIAL DEMANDED**

## <u>FIRST AMENDED COMPLAINT</u>

COMES NOW, the Plaintiff, ADVOCACY TRUST, LLC, as Special Administrator and Personal Representative of the Estate of THOMAS ROY RODABAUGH, deceased, by and through the undersigned counsel, and for this Complaint states as follows, to wit:

## <u>INTRODUCTION</u>

1.      This wrongful death and survival lawsuit arises from negligence and recklessness which caused THOMAS ROY RODABAUGH's untimely death at the age of seventy-one years old. Mr. RODABAUGH suffered catastrophic, life-ending injuries as a result of a car wreck on the afternoon of April 16, 2020. Peter Wayne, by and through ADVOCACY TRUST, LLC, being duly appointed as the Special Administrator and Personal Representative of the Estate, brings this

wrongful death and survival lawsuit against Defendants pursuant to Arkansas state law seeking remedy for the damages suffered by THOMAS ROY RODABAUGH, deceased, the Wrongful Death Beneficiaries, and the Estate as a result of the Defendants' negligence and recklessness.

## PARTIES

2.      THOMAS ROY RODABAUGH, the decedent in this matter, at all times material hereto was a resident of Benton County, Arkansas when he was killed on April 16, 2020, when the vehicle driven by Jackson Tedford moved into the path of the vehicle driven by THOMAS RODABAUGH, causing a collision, and Mr. RODABAUGH's 2017 KIA Soul's occupant protection system failed him.



3.      From hereinafter, any mention of "occupant protection system" will include, but not be limited to, seatbelts, crash sensors, airbags, and pretensioners.

4.      Peter Wayne, by and through ADVOCACY TRUST, LLC, brings this action as Special Administrator and Personal Representative of the Estate of THOMAS ROY RODABAUGH, deceased, having been duly appointed by the Benton County Circuit Court. See

2

Exhibit 1- Order Appointing and Substituting Special Administrator and Personal Representative. The Plaintiff brings this action on behalf of the Estate of THOMAS ROY RODABAUGH, deceased, and his wrongful death beneficiaries pursuant to common law of the state of Arkansas, the Arkansas Products Liability Act of 1979,[1] the Arkansas Survival Actions Act,[2] the Arkansas Wrongful Death Act,[3] and other applicable laws for products liability, ordinary negligence, and wrongful death by Defendants.

5.     The known wrongful death beneficiaries of THOMAS ROY RODABAUGH, deceased, pursuant to Arkansas Code Annotated § 16-62-102(d) (2019), include: Christine Rodabaugh, majority wife.

6.     Defendant, KIA MOTORS CORPORATION ("KMC"), is a foreign corporation doing substantial business in the State of Arkansas. KMC's corporate headquarters is located at 231 Yangjae-dong, Seocho-gu, Seoul, 137-938, South Korea. Because Korea is a signatory to The Convention on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matter (the Hague Convention), Defendant KMC may be served with process by having a Korean-translated copy of this Complaint served upon KMC at its principal address noted above in South Korea through the channels authorized under the Hague Convention. KMC may also be served with this Complaint by serving a second original upon its subsidiary and agent, Defendant KMA, as set out below.[4] At all times pertinent to this Complaint, Defendant KMC was and is in the business of designing, manufacturing, marketing, promoting, advertising and/or selling motor vehicles, including the vehicle known as the 2017 Kia Soul. Defendant KMC transacts business in

---

[1] Ark. Code Ann. §16-116-201, et seq.
[2] Ark. Code Ann. § 16-62-101.
[3] Ark. Code Ann. § 16-62-102.
[4] In addition, Plaintiff will also attempt to reach an agreement as to service of process on Defendant KMC through its counsel, once identified.

3

this State either alone and/or by and through its affiliated subsidiaries and derives substantial revenue from business in the State of Arkansas.

7.      Defendant, KIA MOTORS AMERICA, INC., ("KMA") was and is a foreign corporation headquartered at 111 Peters Canyon Road, Irvine, California 92606, and is licensed to do business in Arkansas. KMA's registered Agent for Service of Process is C T Corporation System, located at 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas 72201.

8.      Hereinafter, any reference to KIA shall be construed as referring collectively to Defendants KIA MOTORS AMERICA, INC. and KIA MOTORS CORPORATION.

9.      Defendant, CRAIN K OF NWA, LLC, d/b/a CRAIN KIA OF BENTONVILLE, d/b/a CRAIN KIA OF NWA, formerly known as Fletcher KIA, (hereinafter referred to as "CRAIN KIA"), was and is an Arkansas corporation headquartered in Benton County, Arkansas.

10.     CRAIN KIA, as the successor-in-interest to Fletcher KIA, assumed and is wholly responsible for any and all damages that may flow from the negligence, recklessness, acts, and omissions of Fletcher KIA.

11.     Pursuant to Ark. Code Ann. § 16-56-125, any person, for the purpose of tolling the statute of limitations, may file a complaint stating his or her cause of action in the appropriate court of this state, whenever the identify of the tortfeasor(s) is unknown.

12.     In the alternative, the name of the unknown tortfeasor(s), individual person or entity, shall be designated by the pseudonym John Doe. Thus, in this case, John Doe 1, in the alternative, is the official name of any individual person defendant or entity with which any individual person defendant may be associated. Furthermore, if there is more than one (1) such unknown tortfeasor, person or entity, the use of John Doe 2, John Doe 3, etc., is also appropriate.

13.     The Plaintiff has attached hereto the affidavit of Plaintiff's attorney that the identity of the tortfeasor(s) is unknown pursuant to Ark. Code Ann. § 16-56-125. Exhibit 2.

4

## JURISDICTION AND VENUE

14.     This is an action for damages in excess of seventy-five thousand dollars $75,000.00, exclusive of interests and costs.

15.     Jurisdiction is proper under Ark. Code Ann. § 16-13-201, which states that circuit courts shall have original jurisdiction of all actions and proceedings for the enforcement of civil rights or the redress of civil wrongs, except when exclusive jurisdiction is given to other courts. Jurisdiction is also proper under the Arkansas Constitution, Amendment 80 § 6(A), which states that circuit courts are established as trial courts of original jurisdiction of all justiciable matters not otherwise assigned pursuant to the Constitution.

16.     Venue is proper in this Court under Ark. Code Ann. § 16-60-112, which states that all actions for damages for personal injury shall be brought in the county where the incident occurred or the county where the person injured resided at the time of the incident. The incident that is the subject of this lawsuit occurred in Benton County, Arkansas, and Mr. RODABAUGH resided in Benton County, Arkansas.

17.     Jurisdiction and venue are further proper regarding Plaintiff's petition for a declaratory judgment because the Uniform Declaratory Judgments Act confers power to issue declaratory judgments upon "[c]ourts of record within their respective jurisdictions." Ark Code Ann. § 16-111-101; see also D. Newbern & J. Watkins, Arkansas Civil Practice and Procedure § 33-2, at 465 (3rd ed. 2002). "The primary court of record is the circuit court, which under Constitutional Amendment 80 has 'original jurisdiction of all justiciable matters not otherwise assigned pursuant to this Constitution.'" Newbern & Watkins § 33-2, at 465. Declaratory judgment statutes are intended to supplement rather than supersede ordinary causes of action. UHS of Arkansas, Inc. v. Charter Hospital of Little Rock, Inc., 297 Ark. 8, 12, 759 S.W.2d 204, 206 (1988); see also Newbern & Watkins § 33-2, at 465.

## FACTS

### KIA's Background

18.     KMC was founded in May 1944 and is Korea's oldest manufacturer of motor

vehicles and has grown to become the world's fifth largest vehicle manufacturer, producing more

than 1.4 million vehicles a year across fourteen (14) manufacturing and assembly operations in

eight (8) countries.[5]



19.     KMC's vehicles are sold and serviced through a network of more than 3,000

distributors and dealers covering one hundred seventy-two (172) countries and has more than forty

thousand (40,000) employees and annual revenues of more than $17,000,000,000.[6]

20.     Additionally, KMC has a world-class research and development center employing

8,000 technicians and spends 6% of its annual revenues on research and development.[7]

21.     According to KMC's Management Philosophy, "[t]he following three key phrases

sums up Kia's management philosophy: full accountability, realizing potential, and practicing

humanity. These key values are encapsulated in a single mantra: 'Building a new future and

realizing humanity's dreams by thinking creatively and tackling challenges head on.'"[8]

22.     KMC's core values include putting the customers first, facing challenges head on,

and aspiring to be the world's best at what they do.[9]

---

[5] https://www.kia.com/eu/about-kia/kia-company/
[6] Id.
[7] Id.
[8] https://www.kia.com/eu/about-kia/kia-company/philosophy/
[9] Id.

### KIA's Previous Failures

23.    The Complaint herein is not the first safety-related failure of KIA. The cases listed below in this section demonstrate that KIA has a pattern of deadly failures.

24.    Robert Tyson died in April 2019 in a frontal collision when his 2012 KIA Forte lacked adequate crashworthiness in its ability to restrain and protect him. Similar to the case at bar, Mr. Tyson's KIA vehicle's airbags did not deploy, resulting in death from "blunt force trauma". Exhibit 3.

25.    Timothy Walthinsen's father was killed when the 2016 KIA Sorento he was driving failed; causing the seat belt to spool out. The passenger air bag failed to prevent Mr. Walthinsen's head from striking the dashboard of the KIA Plaintiff with enough force to cause his death. Exhibit 4.

26.    In February of 2019, Maria Torres was driving her KIA vehicle when the airbag errantly deployed.  Maria Torres survived, but is now blind. See Exhibit 5.

27.    These few, latest, cases represent a small number of the tragedies caused by  KIA's failure to safely design, manufacture, and provide safe products for its customers and the public at large.

### The Crash & Failure That Did Not Have to Be

28.    On the morning of April 16, 2020, THOMAS RODABAUGH and his wife, Christine Rodabaugh, left their home with the mindset that they would be back soon with groceries to fill their home.

29.    On this morning, THOMAS RODABAUGH owned and was operating a 2017 Kia Soul on the roadways of Benton County, Arkansas.

30.    Little did they know, this would be THOMAS' last trip.

7

31.     On the date referenced herein, Mr. RODABAUGH and Christine were in their 2017 KIA Soul, the vehicle at subject here, traveling north on N. Walton Blvd. in Benton County, Arkansas, to and from multiple grocery stores in Benton County, Arkansas and their home in Benton County, Arkansas, when a large Nissan vehicle driven by Jackson Tedford moved into the path of the vehicle driven by THOMAS RODABAUGH, thereby causing a frontal collision.



32.     Moments after the collision occurred at approximately 12:55 p.m., a passer-by stopped and dragged Mr. RODABAUGH out of the vehicle and began doing chest compressions on him.

33.     Another witness, who happened to be a nurse, also stopped to perform mouth to mouth on Mr. RODABAUGH.

34.     These good Samaritans found Mr. RODABAUGH barely conscious, hanging on to his life by a thread.

35.     Mr. RODABAUGH quickly began fading out of consciousness.

36.     Meanwhile, on the other side of the vehicle, Christine was in complete and utter shock, horrified that her husband may not make it out alive.

8

37.     Approximately 5-10 minutes later, Corporal Pippin arrived with the Bentonville Police Department.

38.     Upon Cpl. Pippin's arrival, he observed Bentonville EMS giving chest compressions to Mr. RODABAUGH and prepping him for transport.

39.     Although Mr. RODABAUGH had not yet let go of that thread he was grasping on to during his transportation to Northwest Medical Center, at some point after arrival at the hospital, he could no longer hold on.

40.     Mr. RODABAUGH passed away at approximately 1:43 p.m., succumbing to his injuries. But he did not have to.

41.     Mr. RODABAUGH lost his life due to the failure of KIA's occupant protection system.

42.     Due to KIA's negligence and recklessness, Mr. RODABAUGH sustained injuries to his chest and head (where he struck the sun visor). Injuries that could have been prevented by KIA.

43.     Mr. RODABAUGH's wife, Christine, is left on this earth without her husband, Abby and Julie are left without a father, and Abby's child is left without a grandfather.

### KIA's Preventable Failures in This Case

44.     The instant of Mr. RODABAUGH's wreck - when he needed them the most – KIA's occupant protection system failed. Mr. RODABAUGH was on his own; without the protection required and expected by Mr. RODABAUGH, his family, other KIA customers, and the public at large.

45.     No part of the occupant protection system at subject here performed as they should have, which would have saved THOMAS RODABAUGH's life.

9



46.     Despite this horrific crash, the 2017 KIA Soul's Event Data Recorder did not record

any data pertaining to the crash that is the subject of the litigation herein.

□ EDR Information

| Part No. (EOL Code) as programmed into ACU | 95910-B2050(PSS1) |
|---|---|
| ECU SW Version as programmed into ACU | 490H609D |
| EDR Version as programmed into ACU | |

< Event 1 >

There is no recorded event.

< Event 2 >

There is no recorded event.

10

47.    At the approximate time of 12:54 p.m. on April 16, 2020, THOMAS ROY RODABAUGH's life was instantaneously and purposefully and/or carelessly reduced by KIA to two unrecorded events, a multi-billion dollar corporation that only spends a mere 6% of its revenue on research and development, but claims that their core values include putting the customers first, facing challenges head on, and aspiring to be the world's best at what they do.

## COUNT I: WRONGFUL DEATH AND SURVIVAL ACTION
### Defendants KIA and CRAIN KIA

48.    Plaintiff incorporates each and every foregoing paragraph by reference as if set forth herein word for word.

49.    Companies such as KIA and CRAIN KIA and their agents, servants, employees, and/or contractors must exercise ordinary and reasonable care for the protection and safety of all motorists on the highway, including the same for their customers.

50.    The Defendants, and each of them individually, breached the duty they owed to THOMAS RODABAUGH when they failed to act as a reasonably careful corporation would act under circumstances similar to those in this matter.

51.    Such negligence, including but not limited to, the acts and omissions denoted in detail in each paragraph of this Complaint, were the proximate causes of the death of THOMAS RODABAUGH.

52.    The occupant protection system of the 2017 Kia Soul and/or the component parts are designed and/or manufactured such that it can fail in frontal type collisions similar to one experienced by THOMAS RODABAUGH.

53.    At all times material to this action, Defendants were in the business of designing, engineering, developing, testing, approving, manufacturing, fabricating, assembling, equipping, inspecting, repairing, labeling, advertising, promoting, marketing, distributing, wholesaling,

11

selling, and supplying KIA parts and vehicles in whole, including but not limited to machinery, parts, safety equipment, and/or related computers and software throughout the entire world, including, Arkansas.

54.    Defendants designed, engineered, developed, tested, approved, manufactured, fabricated, assembled, equipped, inspected, repaired, labeled, advertised, promoted, marketed, distributed, wholesaled, sold, supplied, and placed into the stream of commerce defective and unreasonably dangerous products, including but not limited to the 2017 KIA Soul here and its occupant protection system and related parts, including but not limited to machinery, parts, safety equipment, and/or related computers and software.

55.    Immediately before the time of the incident described above, the 2017 Kia Soul and its occupant protection system was in a condition existing when KIA DEFENDANTS completed the manufacturing process and entered it into the stream of commerce. The condition remained unchanged from the time of initial manufacture up to and including the time of the collision described herein. However, even if the subject vehicle and its occupant protection system and related parts had been altered in some fashion before causing the death of Mr. RODABAUGH, the substitution of alternative component parts is well-known and foreseeable by Defendants.

56.    Furthermore, the safer alternative designs were economically and technologically feasible at the time the product left the control of the Defendants by the application of existing and reasonably achievable scientific knowledge.

57.    The aforementioned total 6% of KMC's revenue that it spent on its research and development obviously did not substantially include the investigation into and modifications of its vehicles' occupant protection system.

58.    The defects and dangers of the KIA and the occupant protection system, including but not limited to machinery, parts, safety equipment, and/or related computers and software,

which are the subject of the Complaint, were unknown to Plaintiff at the time THOMAS RODABAUGH was injured and died.

59.     At the time the subject vehicle and its occupant protection system and related parts left the control of the Defendants, including but not limited to machinery, parts, safety equipment, and/or related computers and software, it was defective in design and manufacture and unreasonably dangerous to a person who might reasonably be expected to use it. These defects include, but are not limited to, the conditions describe int eh following subparagraphs:

    a.  The KIA, its occupant protection system, and related parts lacked adequate and sufficient warnings and instructions about the risks, dangers, and harms and reasonable means to reduce such risks, dangers, and harms;

    b.  The KIA and its occupant protection system, including but not limited to machinery, parts, safety equipment, and/or related computers and software, was unsafe in its design and manufacture;

    c.  Defendants had a duty to warn those who may use the KIA and its occupant protection system, including but not limited to machinery, parts, safety equipment, and/or related computers and software, or the risks or defects that were known or reasonably should have been known, including but not necessarily limited to the risks posed by equipment failing or safety mechanisms failing. Defendants failed to warn THOMAS RODABAUGH of the defects or dangers inherent to its product, which was a proximate cause of the death of THOMAS RODABAUGH;

    d.  Defendants had a duty to warn those who may use its product and related parts about updates to designs, machinery, mechanisms, software, and/or safety equipment that could have or should have been taken to protect its customers and users, including THOMAS RODABAUGH, from such unsafe conditions, and/or

13

Defendants failed to ensure proper updates to its designs, machinery, mechanisms, software, and/or safety equipment were made that could have prevented or mitigated the damage to THOMAS RODABAUGH and others;

e.  Defendants had a duty to use ordinary care in the design, manufacture, assembly, testing, inspection, and sale of the KIA vehicle and its occupant protection system and related parts, including but not limited to parts, safety equipment, and/or related computers and software that is the subject of this lawsuit so that it could be safely used for the purpose it was made;

f.  Defendants negligently and carelessly failed to properly design, manufacture, assemble, test and inspect the KIA vehicle and its occupant protection system and related parts, including but not limited to parts, safety equipment, and/or related computers and software which as a proximate result thereof, caused the needless death of THOMAS RODABAUGH. Specifically, Defendants failed to warn THOMAS RODABAUGH and others similarly situated that the KIA and its occupant protection system and related parts would fail;

g.  The safety equipment on the subject KIA and its occupant protection system and related parts were inadequate to protect and/or prevent users from foreseeable injuries.

60.    THOMAS RODABAUGH was a person who would reasonably be expected to use the subject KIA vehicle and its occupant protection system and related parts, including but not limited to machinery, parts, safety equipment, and/or related computers and software that are the subject of this civil action.

61.    As a direct and proximate result of the defective and unreasonably dangerous condition of the manufacturing equipment, including but not limited to machinery, parts, safety

equipment, and/or related computers and software, the equipment and/or related parts failed, which caused catastrophic injuries and the death of THOMAS RODABAUGH.

62.    Defendant CRAIN KIA was the distributor of the aforementioned 2017 Kia Soul. CRAIN KIA knew, or should have known, that it had a duty to warn prospective drivers of the 2017 Kia Soul, including THOMAS RODABAUGH, of the failures of the occupant protection system. CRAIN KIA breached that duty.

63.    As a result, THOMAS RODABAUGH was caused to suffer severe injuries which led to his untimely death, Christine Rodabaugh is left to go through life without her beloved husband of several years, Abby Gaither Rodabaugh and Julie Dudgeon are left to live life without their father, and THOMAS' grandchild(ren) are left without a grandfather.

64.    Pursuant to A.C.A. § 16-602-101 and § 16-62-102, Plaintiff is entitled to recover for the wrongful death of THOMAS RODABAUGH. Plaintiff, Peter Wayne, by and through Advocacy Trust, LLC, as Special Administrator and Personal Representative of the Estate of THOMAS ROY RODABAUGH, deceased, claims damages on behalf of all beneficiaries under A.C.A. § 16-62-102 and the Estate of THOMAS ROY RODABAUGH pursuant to A.C.A. § 16-62-101.

## COUNT II: NEGLIGENCE AGAINST KIA DEFENDANTS

65.    Plaintiff hereby incorporates each and every foregoing paragraph by reference as if set forth herein, word for word.

66.    The KIA DEFENDANTS were negligent in one or more of the following ways:

   a.  In designing, manufacturing, distributing, and selling the subject vehicle without an adequate system for protecting the driver in a frontal collision;

   b.  In designing, manufacturing, distributing, and selling the subject vehicle with a defective airbag system in that it fails to deploy in a frontal collision;

15

c. In failing to adequately test the vehicle's airbag system before selling the vehicle;

d. In designing, manufacturing, distributing, and selling the subject vehicle with a defective seatbelt system in that it failed to properly restrain occupants;

e. In failing to provide proper and adequate warnings for safe use and maintenance;

f. In failing to provide proper and adequate warnings of the dangers of use; and

g. In failing to provide proper and adequate warnings after the subject Kia Soul was manufactured when Kia learned or should have learned about the dangers connected with the vehicle.

67.     KIA knew, or should have known, that such negligence in one or more of the foregoing ways would create a foreseeable risk of harm to users of the Kia Soul, including THOMAS RODABAUGH.

68.     The negligence of KIA in one or more of the foregoing ways was a substantial cause of the injuries sustained by THOMAS RODABAUGH, which led to his eventual death.

69.     Plaintiffs demand judgment against the Defendants for compensatory damages, the costs and expenses of this litigation, interest, and any other such relief to which the Plaintiffs may be entitled.  Plaintiffs further demand trial by jury.

## COUNT III: NEGLIGENCE AGAINST CRAIN KIA OF BENTONVILLE

70.     Plaintiff incorporates each and every foregoing paragraph by reference as if set forth herein, word for word.

71.     Defendant owed a duty of care to Plaintiff and other purchasers and/or occupants of the 2017 Kia Soul, to warn that in cases of a front-end collision impact, the front occupant protection system will fail.

72.     The Defendant was negligent and breached its respective duty of care to Plaintiff and other purchasers and/or occupants of the 2017 Kia Soul by failing to adequately warn

16

passengers of the 2017 Kia Soul, to include Plaintiff that the front occupant protection system including the restraint system and airbag system will fail, and result in serious bodily injury or death, in certain front-end type collision.

73.     CRAIN KIA knew, or should have known, that the 2017 Kia Soul would be involved in front-end type collisions of various types, to include one similar to Plaintiff's collision.

74.     CRAIN KIA knew, or should have known, that the front occupant protection system in the 2017 Kia Soul would fail in various types of front-end collisions, to include Plaintiff's collision.

75.     As a direct and proximate result of the negligence of the Defendant CRAIN KIA, THOMAS RODABAUGH was caused to suffer severe injuries which eventually led to his death.

## COUNT IV: NEGLIGENCE FOR FAILURE TO PROVIDE ADEQUATE WARNING
### Defendants KIA and CRAIN KIA

76.     Plaintiff incorporates each and every foregoing paragraph by reference as if set forth herein word for word.

77.     The Defendants in this case were negligent with regard to the duties they owed THOMAS RODABAUGH in failing to adequately warn Mr. RODABAUGH of the potential dangers of using the product.

78.     The Defendants in this case were negligent in that they did not have adequate policies and procedures in place to ensure that adequate warnings were provided with the 2017 KIA Soul.

79.     Specifically, the negligence of the Defendants includes, but is not limited to, the following:

   a.   Knowing or having reason to know of an unsafe and/or defective condition of their product which would render the product unsafe for foreseeable use.

17

b. Failure to warn. The Defendants' warnings for using the product were inadequate.

80.   This negligence was a proximate cause of the injuries and death of THOMAS RODABAUGH and the damages suffered by him and his wrongful death beneficiaries.

## COUNT V: NEGLIGENCE FOR A DEFECTIVELY DESIGNED PRODUCT
### Defendant(s) KIA

81.   Plaintiff incorporates each and every foregoing paragraph by reference as if set forth herein word for word.

82.   The Defendants had a duty to use ordinary care in the design, in the selection of materials used, in the assembly, and to inspect, test, and sell the subject KIA vehicle herein, which is the subject of this lawsuit, so that those who would use it would be protected from an unreasonable risk of harm while it is being used for any purpose which should reasonably be expected by the manufacturer. However, the Defendants, and each of them individually, violated that duty by causing the damage herein complained of.

83.   The Defendants in this case were negligent in that they did not have adequate policies and procedures in place to ensure that the vehicles, including the subject vehicle herein, were designed in a way that was reasonably safe for use.

84.   Specifically, the negligence of the Defendant(s) includes, but is not limited to:

a. Designing a product that subjects users to an unreasonable risk of harm;

b. By way of its design, these dangers that do not appear 'open and obvious' to users;

c. Lack of foreseeability of probable injury that results from using this product, which would render it unlikely for users of this product to appreciate the dangers associated with use; and

d. Negligence may be imputed to the Defendant(s) even if the design of the product was in accordance with customary methods and procedures in the industry.

18

## COUNT VI: BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY
### Defendants KIA and CRAIN KIA

85.     Defendants breached the warranty of merchantability by selling the 2017 KIA Soul vehicle subject herein, which was not merchantable, and which unmerchantable condition was a proximate cause of Mr. RODABAUGH's death and related damages. Mr. RODABAUGH was a person whom Defendants might reasonably expect to use the vehicle herein.

86.     A seller impliedly warrants that a product is merchantable at the time the product is sold. To be merchantable, a product must be fit for the ordinary purposes for which the product is used, and the product must be adequately labeled and must conform to any promises or affirmations of fact made on the container or label.

87.     THOMAS RODABAUGH and his wrongful death beneficiaries have sustained damages due to Defendants' unsafe, defective, and inherently dangerous vehicle product, which is the product and/or parts that are the subject of this Complaint.

88.     Defendants sold the product and/or parts, which was not merchantable in that the product as designed posed an unsafe and inherent risk to users of the vehicle product and/or parts.

89.     The unfitness of Defendants' product was a proximate cause of damages to THOMAS RODABAUGH and his wrongful death beneficiaries. These are people whom Defendants would have reasonably expected to be affected by Defendants' unsafe, defective, and inherently dangerous subject vehicle product and/or parts.

90.     Defendants have been notified of this breach of warranty.

## COUNT VII: BREACH OF IMPLIED WARRANTY OF FITNESS FOR A
### PARTICULAR PURPOSE
### Defendants KIA and CRAIN KIA

91.     At the time of contracting, Defendants had reason to know the particular purpose for which the 2017 KIA Soul was required. That the Defendants knew that the buyer was relying

19

on Defendants' skill or judgment to select or furnish a suitable vehicle. The vehicle was not fit for the particular purpose for which it was required. The unfitness of the vehicle was a proximate cause of Mr. RODABAUGH's death and related damages. Mr. RODABAUGH was a person who Defendants would reasonably have expected to use the vehicle.

92.     Upon information and belief, the subject vehicle and/or parts were expected to, and did, reach the user and/or consumer without substantial change in the condition in which it was sold and was, at the time of the event, in essentially the same condition as when it left the hands of Defendants. However, even if the subject vehicle and/or parts had been altered in some fashion before causing injury to THOMAS RODABAUGH, the substitution of alternative component parts is well-known and foreseeable by Defendants.

93.     The Arkansas Code Annotated and almost every other states' Uniform Commercial Code implies warranties of merchantability and fitness for a particular purpose in the sale (§§ 4-2-314, 4-2-315) of goods, including those that are the subject of this Complaint.

94.     Defendants breached those implied warranties by selling a defective vehicle and/or parts that violated the warranties of merchantability and fitness for a particular purpose.

95.     As a direct and proximate result of the Defendants' breach of warranties and pursuant to § 4-2-715 and § 4-2A-520, THOMAS RODABAUGH was catastrophically injured and died as a result of those injuries, and Plaintiff and his wrongful death beneficiaries are entitled to an aware of actual and consequential damages as previously set forth herein.

96.     Defendants have been notified of the breach of this warranty.

### COUNT VIII: NEGLIGENCE FOR DEFECTIVE MANUFACTURING
**Defendants KIA**

97.     Plaintiff hereby incorporates all preceding paragraphs by reference as if set forth herein, word for word.

98.     The Defendants in this case were negligent in their manufacturing of the subject vehicle and its occupant protection system and related parts herein and should be held liable because Defendants had a duty to use ordinary care in assembling, inspecting, testing, and selling the product vehicle and its occupant protection system and related parts in order to protect those who will use it from unreasonable risk of harm.

99.     The Defendants in this case were negligent in that they did not have adequate policies and procedures in place to ensure that the vehicles and their occupant protection system and related parts sold were manufactured in an appropriate and reasonable fashion.

100.    Specifically, the negligence of the Defendants for this count includes, but is not limited to:

      a. Negligent manufacturing of the occupant protection system which failed. The occupant protection system should have triggered all related parts, including but not limited to the seatbelts, airbags, crash sensors, and pretensioners, to, at a bare minimum, recognize and record the crash, but more importantly, to trigger the aforementioned parts.

      b. Failure on behalf of Defendants to at least warn its users that the above may not happen.

**COUNT IV: STRICT PRODUCTS LIABILITY**
**Defendants KIA and CRAIN KIA**

101.    Plaintiff hereby incorporates each and every foregoing paragraph by reference as if set forth herein, word for word.

102.    Defendants are strictly liable for all damages proximately caused by the defective and unreasonably dangerous condition of the product vehicle and the occupant protection system and related parts, including but not limited to seatbelts, airbags, pretensioners, and crash sensors,

21

that are the subject of this Complaint. Defendants are strictly liable for all damages proximately caused by the inadequacies in the design and manufacture of the product vehicle and the occupant protection system and related parts that are the subject of this Complaint. The damages that Plaintiff and the Wrongful Death Beneficiaries suffered, *inter alia*, include, but are not limited to, severe and permanent injuries, wrongful death, future lost wages and loss of earning capacity, conscious physical and emotional pain, suffering and mental anguish, and other damages in excess of the amount required for federal diversity jurisdiction.

103.    Defendants had a duty to properly and safely design, test, manufacture, maintain, and inspect the product vehicle and the occupant protection system and related parts that are the subject of this Complaint, and a duty to place reasonably safe product vehicles and occupant protection systems and related parts in the stream of commerce.

104.    Upon information and belief, the product vehicle and the occupant protection system and related parts that are the subject of this Complaint were expected to, and did, reach the user and/or consumer without substantial change in the condition in which it was sold and was, at the time of the injuries, in essentially the same condition as when it left the hands of the Defendants. However, even if the subject vehicle and the occupant protection system and related parts had been altered in some fashion before causing damages to THOMAS RODABAUGH and the Wrongful Death Beneficiaries, the substitution of alternative component parts is well-known and foreseeable by Defendants.

105.    Defendants knew or should have known that the subject vehicle and the occupant protection system and related parts were inherently dangerous, and that the same were defective as previously set forth herein.

106.    Defendants had a duty to warn THOMAS RODABAUGH and the Wrongful Death Beneficiaries as to any defects of the subject vehicle and the occupant protection system and related parts.

107.    The subject Kia Soul was defective and in an unreasonably dangerous condition when sold in one or more of the following ways.

  a.  The subject Kia Soul was not designed to prevent passenger's head and chest from striking the front of the dashboard and/or steering wheel;

  b.  The subject Kia Soul's airbag system was defectively designed and/or manufactured in that it failed to deploy in certain frontal collisions, such as the collision experienced by Plaintiff;

  c.  The subject Kia Soul seat belt system was defectively designed and/or manufactured because it failed to reasonably restrain the occupant in a foreseeable collision;

  d.  The subject Kia Soul did not contain proper and adequate warnings for safe use and maintenance;

  e.  The subject Kia Soul did not contain proper and adequate warnings of the dangers of use; and

  f.  Adequate warnings or instructions were not provided after the subject Kia Soul was manufactured when Kia learned or should have learned about the dangers connected with the vehicle.

108.    To the bet of Plaintiff's information and belief, the airbag system and restraint system were not altered at any point after manufacture to the date of the collision.

109.    A the time of the subject collision, the subject vehicle and its occupant protection system was being used in a manner intended by KIA DEFENDANTS and the subject occupant

protection system including the airbags and restraints presented a substantial danger that was foreseeable by Kia, but not readily apparent by its users.

110.   At all times material hereto, the subject Kia Soul was maintained in a reasonably foreseeable manner.

111.   Defendants violated their duties and were careless, negligent, grossly negligent, reckless, willful, and wanton, in the following particulars:

    a.   Designing, manufacturing, and placing into commerce unsafe vehicles and the occupant protection systems and related parts that are the subject of this Complaint;

    b.   Failing to properly and adequately design, test, and manufacture the vehicles and the occupant protection systems and related parts that are the subject of this Complaint;

    c.   Failing to design, manufacture, and sell safe versions of the vehicles and the occupant protection systems and related parts that are the subject of this Complaint, despite the fact that such assembly designs were technologically and economically feasible;

    d.   Failing to have discovered that the vehicle and the occupant protection system and related parts that are the subject of this Complaint was defective;

    e.   Failing to properly inspect, maintain, and assemble the vehicle and the occupant protection system and related parts that are the subject of this Complaint;

    f.   Allowing a defective and/or inherently dangerous subject vehicle and the occupant protection system and related parts that are the subject of this Complaint to be used;

    g.   Failing to warn that the defective, unsafe, and/or inherently dangerous vehicle and the occupant protection system and related parts that are the subject of this Complaint may be harmful;

24

h. Failing to properly hire, train, supervise, and/or retain employees and/or contract workers that are able to ensure the safe and proper design, manufacturing, testing, and placing into the stream of commerce vehicles and occupant protection system and related parts;

i. Failing to have and/or follow adequate policies and procedures to ensure the subject vehicle and the occupant protection system and related parts would be designed, tested, manufactured, sold, and assembled in a safe manner;

j. Placing the defective and unsafe subject vehicle and the occupant protection system and related parts that are the subject of this Complaint into the stream of commerce without adequate warnings, while knowing that the product would be sold to and used by persons in the industry, thereby exposing them and other third parties in the vicinity to a high and unreasonably risk of injury without adequate warnings; and

k. Failing to create and provide sufficient warnings as to the dangerous propensities of the subject vehicle and the occupant protection system and related parts that are the subject of this Complaint to the end-user.

112.   As a direct and proximate result of the carelessness, negligence, gross negligence, recklessness, willfulness, and wantonness of Defendants, Plaintiff and the Wrongful Death Beneficiaries were severely damaged and are entitled to an award of actual and consequential damages as previously set forth herein.

113.   Defendants' conduct in designing, manufacturing, and placing an inherently dangerous product, with a known and serious risk of harm, into the stream of commerce was reckless, willful, wanton, heedless, and in flagrant disregard to public safety. As a result, Plaintiff

and the Wrongful Death Beneficiaries are entitled to recover punitive and/or exemplary damages in an amount to be determined by the trier of fact.

114.   Plaintiff demands judgment against the Defendants for compensatory damages, the costs and expenses of this litigation, interest, including prejudgment interest, and any other such relief to which the Plaintiffs may be entitled.  Plaintiffs further demand trial by jury.

## DAMAGES

115.   Plaintiff hereby incorporates each and every foregoing paragraph by reference as set forth herein, word for word.

116.   In addition to the physical injuries and horrific mental anguish THOMAS RODABAUGH suffered prior to his untimely death, he also suffered the loss of enjoying his life, his family, and his friends.



117.   According   to   THOMAS'
family and friends, he was a selfless, kind,
fun-loving,   and   respected   man   whom
everyone loved. Personally, THOMAS loved
building and "tinkering" with antique cars,
and he very much looked forward to getting to
spend every possible moment with his new
grandchild, Abby's child.



118.   Mr. RODABAUGH suffered a
strike to the head by the vehicle's sun visor, his knees were slammed into the bottom of the dash,
and his chest was crushed against the steering wheel.

119.   Mr. RODABAUGH was left for several minutes to suffer through these devastating
injuries, up and until he arrived at the hospital.

120.   Christine, THOMAS' wife, was mentally suffering alongside THOMAS, as she
was wondering if he was even going to make it out alive.

121.   Additionally, Christine was physically suffering, as she was in the vehicle with
THOMAS and suffered less traumatic injuries herself.

122.   Plaintiff, as Special Administrator and Personal Representative for the Estate of
THOMAS ROY RODABAUGH, is entitled to recover the following elements:

   a.   THOMAS RODABAUGH's loss of life;

   b.   THOMAS' loss of enjoyment of life;

   c.   The nature, extent, duration, and permanency of THOMAS' injuries;

   d.   The conscious pain, suffering, and mental anguish experienced by THOMAS prior
        to his death;

e.  The value of any earnings lost;

f.  The present value of any earnings reasonably certain to be lost in the future;

g.  The present value of any loss of ability to earn in the future;

h.  All pecuniary injuries sustained by the wrongful death beneficiaries of THOMAS;

i.  Mental anguish suffered in the past by the wrongful death statutory beneficiaries of THOMAS as a result of the Defendants' negligence;

j.  Mental anguish reasonably probable to be suffered in the future by the wrongful death statutory beneficiaries of THOMAS as a result of the Defendants' negligence;

k.  All damages, including special damages, that may be afforded to the Plaintiff based on the facts, claims, and allegations set forth in this Complaint or subsequently discovered in litigation or trial of this matter; and

l.  All other damages afforded under the law or deemed applicable by the Arkansas Model Jury Instructions.

123.    As a direct and proximate result of the Defendants' negligent and reckless conduct, Christine Rodabaugh has lost the services, society, companionship, and life-long partnership of her husband, THOMAS RODABAUGH.

124.    Plaintiff is entitled to fair compensation for the reasonable value of any loss of the services, society, companionship, and life-long partnership of her husband, THOMAS, which was proximately caused by the negligence of the Defendants, and for all other damages afforded under the law or deemed applicable by the Arkansas Model Jury Instructions.

## **PUNITIVE DAMAGES**

125.    Plaintiff hereby incorporates each and every foregoing paragraph by reference as if set forth herein, word for word.

126.    Plaintiff is entitled to recover punitive damages in accordance with Arkansas law based upon the Defendants' complete indifference to and conscious disregard for the safety of THOMAS ROY RODABAUGH, and others, causing or contributing to catastrophic and permanent injuries, including death.

127.    Defendants' wanton and reckless acts and omissions occurred under circumstances where their conduct, in total disregard of the consequences, would naturally and probably result in injury or damages to Plaintiff.

128.    Defendants knew, or should have known, based on previous actions against them, including those referenced in the Complaint herein, that the occupant protection system KIA used in its product(s) were unsafe and unfit.

129.    Although Defendants knew, or should have known, of these safety deficiencies in their product(s), they chose to design, manufacture, sell, place into the stream of commerce, etc. said product(s).

130.    Specifically, Defendants placed their product(s) into the stream of commerce in Northwest Arkansas, thereby resulting in careless and wanton danger to Northwest Arkansas consumers, i.e. THOMAS RODABAUGH.

131.    Defendants knew, or should have known, in light of the surrounding circumstances, that their conduct would naturally and probably result in catastrophic and serious injury, and continued this conduct with malice and wanton and reckless disregard for the consequences of its actions for which punitive damages should be awarded.

132.    Furthermore, upon information and belief, Defendants, and each of them individually, prioritized profits over the safety of their consumers, and the public at large, with a reckless disregard of the consequences.

133.    KIA is a business entity that is structured to profit substantially based upon its manufacturing, designing, selling, etc. of its products. THOMAS RODABAUGH was an individual person who placed his trust and, quite literally, his and his family's lives, in the hands of KIA. KIA let down Mr. RODABAUGH and his family by not putting their entire business behind manufacturing, designing, selling, etc. a safe product.

134.    The process of litigation, in particular this lawsuit, is like the only route that KIA can become aware of, if not already, its failures and the need for change in not only its policies and procedures, but also its product(s).

135.    In addition to actual, special, and consequential and compensatory damages, Plaintiff demands a judgment against Defendants for punitive damages in an amount necessary and sufficient to deter Defendants from the above described conduct and to punish Defendants for their willful, wanton, gross, flagrant, reckless, outrageous, and egregious conduct.

## **DEMAND FOR JURY TRIAL**

136.    Plaintiff seeks damages in excess of the amount necessary for Federal Court jurisdiction.

137.    Plaintiff seeks a jury to act as the conscience of the community; not only to compensate Plaintiff for damages, but also to deter similar conduct in the community in the future.[10]

138.    The jury is the mechanism provided by common law for determining the presence or absence of due care, reasonableness, prudence, decency, and common sense. Gent v. State, 239 Ark 474 (1965). In this case, the Plaintiff requests that a jury, as the conscience of the community,

---

[10] *Williams v. O'Neal Ford, Inc.*, 668 S.W. 2d 545 (Ark. 1984) (the jury acts as the 'conscience of the community' is punishing wrongdoers); *see also Georgia-Pacific Corp. v. Carter*, 265 S.W. 3d 107 (Ark. 207) ("the tort system's **primary objectives** are compensation and **deterrence**").

determine if the care used by the Defendants meets the standards of reasonableness, due care, and prudence.[11]

139.    The Plaintiff asks for a jury to set the standards, not only for this case, but for the next cases that are tried. As Dean Prosser noted over 50 years ago:

"The "prophylactic" factor of preventing future harm has been quite important in the field of torts. **The Courts are not only concerned with compensation of the victim, but with admonishment of the wrongdoer.** When the decision of the courts becomes known, and defendants realize that they may be held liable, there is of course a strong incentive to prevent the occurrence of harm."[12] [emphasis added]

140.    The Plaintiff in this case is not solely concerned with the compensation for his/her own harms and losses, but seeks a jury to set standards in the community that provides the incentive for the defendants and those similarly situated to prevent the occurrence of the same harm to the members of the community in the future.

141.    Plaintiff reserves the right to amend this Complaint including, but not limited to, additional counts and facts supportive of compensatory and/or punitive damages claims as discovery develops.

WHEREFORE, premises considered, Plaintiff prays for judgment against the Defendants, jointly and severally, in an amount in excess of the amount necessary for federal jurisdiction in diversity of citizenship cases, the exact amount to be determined by a jury, for attorneys' fees and costs of this litigation, and for all other relief to which the Plaintiff may be entitled.

Dated this 28th day of October, 2020.

Respectfully Submitted,

Peter Wayne, by and through Advocacy Trust, LLC, Special Administrator and

---

[11] *Nice v. ZHRI, Inc.*, 105 F.Supp. 2d 1028, 1029 (2000) (holding it was not error for counsel to tell the jury, "You set the standards for our community. You six people will set the standards in this case and next case that is tried.").
[12] Prosser Handbook on the Law of Torts, pg. 23 (3d ed. 1954); restated Prosser and Keeton, Torts, § 4, at 25 (5th ed. 1984).

31

Personal Representative for the Estate of
THOMAS ROY RODABAUGH, Decedent,
and on behalf of the Wrongful Death
Beneficiaries,

PLAINTIFF

By:   /s/Sach D. Oliver
      Sach D. Oliver, AR Bar No. 2006251

      /s/T. Ryan Scott
      T. Ryan Scott, AR Bar No. 2008161

      /s/Geoff Hamby
      Geoff Hamby, AR Bar No. 2015171

      /s/Samuel W. Mason
      Samuel W. Mason, AR Bar No. 2019143

      /s/Frank H. Bailey
      Frank H. Bailey, AR Bar No. 74004
      BAILEY & OLIVER LAW FIRM
      3606 Southern Hills Boulevard
      Rogers, AR 72758
      (479) 202-5200 Phone
      (479) 202-5605 Fax
      soliver@baileyoliverlawfirm.com
      fbailey@baileyoliverlawfirm.com
      rscott@baileyoliverlawfirm.com
      ghamby@baileyoliverlawfirm.com
      smason@baileyoliverlawfirm.com

      and

By:   /s/John F. Romano
      John F. Romano, Florida Bar No. 175700
      Andrew G. Moore, Florida Bar No. 122631
      ROMANO LAW GROUP
      Post Office Box 21349
      West Palm Beach, FL   33416-1349
      (561) 533-6700 Phone
      (561) 533-1285 Fax
      john@romanolawgroup.com
      andrew@romanolawgroup.com
      *(Pro Hac Vice Pending)*

      *Attorneys for the Plaintiff*