# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

| | |
|---|---|
| ADVOCACY TRUST, LLC, as Special Administrator and Personal Representative of the Estate of THOMAS ROY RODABAUGH, Deceased, <br><br> Plaintiffs, <br><br> vs. <br><br> KIA MOTORS CORPORATION, KIA MOTORS AMERICA, INC., And JOHN DOES 1 – 3, <br><br> Defendants. | Case No. 5:21-CV-05064-PKH |

## KIA AMERICA, INC. AND KIA CORPORATION'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff's punitive damages claim must fail for two distinct reasons. First, Plaintiff cannot set forth clear and convincing evidence showing that Kia knew or should have known that it would naturally and probably cause injury to Plaintiff and that Kia continued such conduct with malice or in reckless disregard of the consequences. Second, Plaintiff cannot set forth clear and convincing evidence that Kia consciously disregarded known risks of airbag non-deployment after learning of the recall condition in certain Kia vehicles. Quite the contrary, upon learning of a variance in the manufacture of certain SRSCMs, Kia immediately took steps to investigate the root cause and initiated a voluntary safety recall. For those reasons, Plaintiff cannot prove her claim for punitive damages with any competent evidence. Plaintiff's claim must fail as a matter of law.

## BACKGROUND

On April 16, 2020, Mr. Thomas Rodabaugh was driving a 2017 Kia Soul with his wife in the passenger seat on North Walton Boulevard in Bentonville, Arkansas. Statement of Uncontroverted Material Facts ("SUMF") at ¶¶ 1-2. Jackson Tedford, driving a 2003 Nissan Xterra, was turning left on to Walton Boulevard from N.W. A Street when he failed to yield the right-of-way and pulled out in front of the 2017 Kia Soul. *Id*. at ¶¶ 3-4. Mr. Tedford collided with the front of the Kia Soul, slightly offset to the Kia's passenger side. *Id*. at ¶ 4. The Kia Soul's airbags did not deploy. *Id*. at ¶ 5.



Mr. Rodabaugh was not wearing his seatbelt at the time of the accident. *Id*. at ¶ 6. His chest hit the steering wheel upon impact, which caused an aortic dissection. *Id*. at ¶ 7. Mrs. Rodabaugh, the front passenger, was wearing her seatbelt and suffered some injuries, but walked away from the accident. *Id*. at ¶ 8.

Plaintiff filed this product liability lawsuit against Kia claiming that the entire occupant protection system of the Kia Soul was defective because the airbags did not deploy during the accident. *Id*. at ¶¶ 20-21. Plaintiff alleges the front airbags failed to deploy, due to either negligence and/or defective design or manufacturing on Kia's behalf. *Id*. at ¶ 21. Plaintiff's

punitive damages allegations focus on Kia's conduct prior to the April 16, 2020 accident. Kia, however, did not have any knowledge of any alleged defect prior to the accident that would allow the imposition of punitive damages. *Id*. at ¶ 13.

On January 25, 2022, nearly two years after the subject accident, Kia worked with the National Highway Traffic Safety Administration (NHTSA) to issue a recall for certain 2017-2019 Kia vehicles, including some 2017 Kia Souls. *Id*. at ¶ 9. The recall relates to a variance in the manufacture of certain Supplemental Restraint System Control Module ("SRSCM") that can prevent the vehicle's airbags from deploying in an accident. *Id*. at ¶¶ 10-11. The first opportunity to learn of this condition came on July 27, 2021, when Kia Corporation ("KC") received a report from the service team in Korea that showed an Airbag Warning Light in a 2019 Kia Sedona turned on due to the diagnostic trouble code ("DTC") B1620. *Id*. at ¶ 13. KC investigated this report but was unable to duplicate the DTC and determine the root cause. *See id*. at ¶ 15. KC continued to monitor the market for similar conditions. *Id*. at ¶ 13. On September 8, 2021, KC received a second report regarding illumination of an Airbag Warning Light in a 2019 Kia Sedona due to the DTC B1620. *Id*. at ¶ 14. KC collected the SRSCM from the vehicle for further investigation and began collecting warranty-returned parts from other vehicles for investigation. *Id*. Between October 2021 and January 2022, KC investigated warranty-returned SRSCMs and determined that, due to variances in the manufacture of these units, a memory chip within the SRSCM could potentially become damaged by contacting the cover of the SRSCM. *Id*. at ¶ 15. This damage would illuminate the Airbag Warning Light and prompt the DTC B1620. *Id*. KC notified Kia America, Inc. ("KA") via the North American Safety Office of its investigation on January 12, 2022, and identified certain 2017-2019 Kia vehicles that may be affected by this condition. *Id*. at ¶ 16. KA promptly investigated and issued a safety recall on January 25, 2022. *Id*. at ¶ 9.

At no point in the design, manufacture, testing, or later recall did Kia know or should have known its conduct would likely result in injury or damage, and continue with that course of conduct out of malice or reckless disregard. Plaintiff's bare-bones claim for punitive damages is entirely unsupported, and Plaintiff cannot satisfy Arkansas' demanding punitive damages standard. Plaintiff's punitive damages claim must fail as a matter of law.

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating the absence of genuine, material issues for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant carries this burden, then the burden shifts and the non-movant must come forward with specific evidence establishing a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In responding to a properly supported motion for summary judgment, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. at 586. Instead, it must affirmatively dispute a fact "that might affect the outcome of the suit under the" law governing the issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). What is more, this dispute must be "genuine" in that a "reasonable jury could return a verdict" for the non-movant. *Id*.

When reviewing a motion for summary judgment, the facts are viewed in a light favorable to the non-movant "only if there is a genuine dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 585 (2009). A motion for summary judgment is not defeated by bare allegations in a pleading. *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015). Nor is it defeated by a "mere scintilla of evidence," especially where the non-movant bears the burden

of persuasion at trial. *Id*. (internal quotation marks and citation omitted). If the non-movant has not and cannot present sufficient evidence to establish an essential element of its claim, then the movant is entitled to judgment as a matter of law. *Id*.

## ARGUMENT

### I. Plaintiff is Not Entitled to Punitive Damages.

Arkansas law does not favor punitive damages and "significant limits are placed on their award." *In re Aircraft Accident at Little Rock, Ark. On June 1, 1999*, 351 F.3d 874, 876 (8th Cir. 2003) (applying Arkansas law). Punitive damages are awardable only if a "defendant acts with a sufficient degree of willfulness, wantonness, or conscious indifference to consequences that malice can be inferred." *Id*. at 877. To that end, "negligence alone, however gross, is not sufficient to sustain a punitive damages award." *Id*.; *see also Nat'l Bank of Commerce v. McNeill Trucking Co., Inc.*, 828 S.W.2d 584, 587 (Ark. 1992) (reiterating that "negligence, however gross, will not justify an award of punitive damages" under Arkansas law); *Alpha Zeta Chapter of Pi Kappa Fraternity by Damron v. Sullivan*, 740 S.W.2d 127, 132-33 (Ark. 1987) (same).

"Punitive damages are an exceptional type of sanction reserved solely for those activities that not only are risky, but create a level of danger or risk that exceeds a certain threshold level." *In re Aircraft Accident at Little Rock*, 351 F.3d at 882. "Under the Arkansas punitive damages standard, a defendant's mental state, no matter how perverse, does not warrant a punitive damages award unless it is associated with a type of conduct that would 'naturally and probably result in injury.'" *Id*. "This is not an insignificant requirement under Arkansas law." *Id*.

### A. Plaintiff cannot prove that any aggravating factors were present sufficient to support an award for punitive damages.

To recover punitive damages in Arkansas, a plaintiff must prove by clear and convincing evidence that a "defendant is liable for compensatory damages" and that one of two aggravating

factors was present.  Ark. Code Ann. §§ 16-55-206; 16-55-207.  An aggravating factor may be present where:

> (1) the defendant "knew or ought to have known" that "his or her conduct would naturally and probably result in injury" to the plaintiff; and
>
> (2) that "he or she continued the conduct with malice or in reckless disregard of the consequences" of such conduct.

Ark. Code Ann. § 16-55-206(1).[1]  "Arkansas courts have consistently held this heightened standard is required for punitive damages to be awarded." *Driver v. D. Mosley Trucking, Inc.*, No. 4:13-cv-4074, 2015 WL 1861808, at *3 (W.D. Ark. Apr. 23, 2015) (citing cases).

Plaintiff has not and cannot support her punitive damages claims with evidence sufficient to satisfy the heightened standard for such an award.  In a negligence case, there must be competent evidence showing that "the negligent party knew, or had reason to believe, that his act of negligence was about to inflict injury, and that he continued in his course with a conscious indifference to the consequences, from which malice may be inferred." *Yeakley v. Doss*, 257 S.W.3d 895, 899 (Ark. 2007) (internal quotation marks and citation omitted).  In other words, there must be an element of wantonness or recklessness to support an award of punitive damages. *Alpha Zeta Chapter of Pi Kappa Alpha Fraternity by Damron*, 740 S.W.3d at 132.  Negligence alone is not enough. *Id.*  The same standard applies to a claim for punitive damages via strict liability. *Mulligan v. Lederle Lab'ys, Div. of Am. Cyanamid Co.*, 786 F.2d 859, 864 (8th Cir. 1986).  What is more, any claim for punitive damages must be supported by "substantial evidence." *Stein v. Lukas*, 823 S.W.2d 832, 834-35 (Ark. 1992).

---

[1] The other aggravating factor may be present where the "defendant intentionally pursued a course of conduct for the purpose of causing injury or damage."  Ark. Code Ann. § 16-55-206(2).  This aggravating factor is not at issue in this case, as Plaintiff does not allege that Kia intentionally sought to cause injury.

Plaintiff cannot meet this high standard. Other than miming the right words in the Amended Complaint, Plaintiff has not supported the claim with competent evidence. There is no evidence that Kia was wanton or reckless in any way. This lack of evidence showing that Kia "knew, or ought to have known" that certain conduct would "naturally and probably result in injury" is fatal to Plaintiff's punitive damages claim. *See In re Aircraft Accident at Little Rock*, 351 F.3d at 882 (granting a motion for summary judgment on punitive damages because "[n]obody testified" that defendants' conduct would "naturally and probably" result in injuries to the plaintiffs). Because Plaintiff's punitive damages are factually and legally unsupported, Kia is entitled to summary judgment as a matter of law.

### i. Kia did not knowingly engage in conduct that would naturally and probably result in a defect in the 2017 Kia Soul.

Plaintiff has not and cannot produce competent evidence showing that Kia knew that its conduct would naturally and probably cause an alleged defect in the 2017 Kia Soul. In fact, Kia did not have any knowledge of any variance in the manufacture of a vehicle's SRSCM at time of the April 16, 2020 accident. *See* SUMF at ¶ 13. It wasn't until July 27, 2021—15 months after the subject accident—that KC received the first report of a vehicle with the DTC B1620. *Id*. It would have been impossible for Kia to knowingly engage in conduct that would result in an alleged defect before it even knew an alleged defect existed.

Just because an injury *did* occur does not mean that the injury "was the *natural and probable* consequence of that conduct." *In re Aircraft Accident at Little Rock, Arkansas*, 351 F.3d at 882. "Punitive damages are an exceptional type of sanction reserved solely for those activities that not only are risky, but create a level of danger or risk that exceeds a certain threshold level. Under the Arkansas punitive damages standard, a defendant's mental state, no matter how

perverse, does not warrant a punitive damages award unless it is associated with a type of conduct that would 'naturally and probably result in injury.'" *Id.* (original emphasis).

Plaintiff has not come forward with any lay or expert testimony showing that Kia's specific conduct naturally and probably led to the recall condition. Nor has Plaintiff come forward with any evidence showing that Kia knew, or should have known, that the recall condition would result from the (unidentified) conduct.[2] Simply put, there is not substantial evidence to show that Plaintiff's injuries were a natural and probable result of Kia's conduct, and, because of this, Plaintiff's claims for punitive damages are left unsupported as a matter of law and should be dismissed.

### ii. Kia reacted quickly and appropriately to protect others after discovering a variance in the manufacture of certain Kia vehicles.

Under Arkansas law, an award of punitive damages is appropriate "only where the evidence indicates that the defendant acted wantonly in causing the injury or with such a conscious indifference to the consequences that malice may be inferred." *D'Arbonne Constr. Co., Inc. v. Foster*, 123 S.W.3d 894, 898 (Ark. 2003). Negligence is not sufficient, and neither is gross negligence. *Morris v. Union Pac. R.R.*, 373 F.3d 896, 903 (8th Cir. 2004). Punitive damages claim requires proof of conscious disregard at the very least and, without such proof, there cannot be an award of punitive damages as a matter of law. *In re Aircraft Accident at Little Rock, Arkansas*, 231 F. Supp. 2d 852, 880-81 (E.D. Ark. 2002), *aff'd*, 351 F.3d 874 (8th Cir. 2003).

In this case, even with all inferences drawn against it, Kia's conduct does not rise to the level of wantonness or recklessness necessary to support an award of punitive damages. Arkansas

---

[2] To be sure, acts of negligence by themselves do not give rise to the inference that a person knowingly acted in a way that would naturally and probably result in injury. *In re Aircraft Accident at Little Rock, Ark. on June 1, 1999*, 351 F.3d at 882. Neither does the violation of governmental rules and regulations without more. *Id.* Any claim that Kia was negligent (which it was not) does not support a claim for punitive damages, without further evidence of knowing conduct.

state and federal courts have ruled against awards of punitive damages when evidence of malice is absent, as it is here. *See Nat'l By-Prods., Inc.*, 731 S.W.2d at 196-97 (reversing an award of punitive damages in a truck accident case because there was no evidence that a trucking company was consciously indifferent to the risk of an accident, even though multiple acts of negligence may have contributed to the accident's occurrence); *In re Aircraft Accident at Little Rock, Arkansas*, 351 F.3d at 881-82 (affirming summary judgment against a punitive damages claim where a pilot's questionable decisions, which led to a plane crash, were not accompanied by evidence of a knowing indifference to the consequences of those decisions); *McCaslin v. French Trucking, Inc.*, No. 2:16CV000049 JLH, 2017 WL 4228204, at *2-3 (E.D. Ark. Sept. 22, 2017) (entering summary judgment on a punitive damages claim in a truck accident case where there was no evidence of conscious disregard, even though the truck driver and the trucking company could have taken steps to prevent the accident).

For example, in *National By-Products, Inc. v. Searcy House Moving Co., Inc.*, a truck driver rear-ended a car, killing two people and damaging property. 731 S.W.2d at 195. At the time, the truck was legally overweight; the driver was speeding; the truck's brakes were not inspected per the trucking company's policy; and the driver was driving aggressively before the accident. *Id*. at 195-96. Nonetheless, the Supreme Court of Arkansas reversed the judgment awarding punitive damages because the facts did not show that the trucking company knew that "some act of negligence was about to cause damage, but still continued to cause that damage." *Id*. at 196-97.

There is no evidence in the present case showing Kia knew of some act of negligence or an alleged defect that would affect airbag deployment in its vehicles, and much less that Kia proceeded to allow that condition to occur anyway. Rather, the opposite is true. The 2017 Kia

Soul was rigorously tested and exceeded all federal testing standards. SUMF at ¶ 19. Moreover, when Kia learned of a potential variance in the manufacture of SRSCM in certain vehicles, it immediately took steps to investigate and protect customers. *See id*. at ¶¶ 14-15. Over fifteen months after the subject accident, KC investigated reports from the service department in Korea indicating the two vehicles had an illuminated Airbag Warning Light due to the DTC B1620. *Id*. at ¶¶ 13-14. KC's investigation included reviewing warranty-returned SRSCMs from other vehicles to identify the root cause for the DTC. *Id*. at ¶ 14. KC then reported its findings to KA's North American Safety Office, who opened its investigation into the 2017-2019 Kia vehicles that may have been affected by this condition. *Id*. at ¶ 16. Less than two weeks later, Kia and NHTSA issued a voluntary safety recall. *Id*. at ¶ 9.

Even though a recall *did* occur, there is no evidence showing the Kia—either KC or KA—consciously disregarded the risk that a variance in the manufacture of an SRSCM would occur. Even when KC discovered the issue – over a year after the subject accident – it moved quickly to correct the issue via a voluntary recall. After first learning of the recall condition, Kia was "actively making choices, and exhibiting some level of care, with the apparent motivation of lessening risk and protecting the physical well-being" of its customers. *In re Aircraft Accident at Little Rock, Ark. on June 1, 1999*, 351 F.3d at 881-82. Thus, Plaintiff's punitive damages claim must fail because it is unsupported by any evidence of malice, by inference of otherwise, and Kia is entitled to judgment as a matter of law on that claim.

## CONCLUSION

For the foregoing reasons, Kia respectfully requests this Court grant its Motion for Partial Summary Judgment, and grant such other and further relief as the Court deems just and proper.

Dated: February 21, 2023

Respectfully submitted,

*/s/ Jennifer J. Artman*
Robert T. Adams *(pro hac vice)*
Jennifer J. Artman *(pro hac vice)*
Connor W. Smith *(pro hac vice)*
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone (816) 474-6550
rtadams@shb.com
jartman@shb.com
cwsmith@shb.com

and

Jamie Huffman Jones (AR Bar No. 2003125)
FRIDAY, ELDREDGE & CLARK, L.L.P.
3350 S. Pinnacle Hills Pkwy., Suite 301
Rogers, Arkansas 72758
Telephone: (479) 695-2117
Facsimile: (501) 537-2922
jjones@fridayfirm.com

***Attorneys for Defendants Kia America, Inc. and Kia Corporation***

## **CERTIFICATE OF SERVICE**

  This will certify that on this February 21, 2023, the above and foregoing was served via e-mail to the following counsel of record:

Peter Wayne, by and through Advocacy Trust, LLC,
Special Administrator and Personal Representative
for the Estate of THOMAS ROY RODABAUGH,
Decedent, and on behalf of the Wrongful Death Beneficiaries,

*Plaintiff*

Sach D. Oliver, AR Bar No. 2006251
T. Ryan Scott, AR Bar No. 2008161
Geoff Hamby, AR Bar No. 2015171
Samuel W. Mason, AR Bar No. 2019143
Frank H. Bailey, AR Bar No. 74004
BAILEY & OLIVER LAW FIRM
3606 Southern Hills Boulevard
Rogers, AR 72758
Telephone: (479) 202-5200
Facsimile: (479) 202-5605
soliver@baileyoliverlawfirm.com
fbailey@baileyoliverlawfirm.com
rscott@baileyoliverlawfirm.com
ghamby@baileyoliverlawfirm.com
smason@baileyoliverlawfirm.com

and

John F. Romano, Florida Bar No. 175700
Jessica L. Latour, Florida Bar No. 109074
ROMANO LAW GROUP
P. O. Box 21349
West Palm Beach, FL 33416-1349
Telephone: (561) 533-6700
Facsimile: (561) 533-1285
john@romanolawgroup.com
jessica@romanolawgroup.com

*Attorneys for the Plaintiff*

            */s/ Jennifer J. Artman*
            Jennifer J. Artman