UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ADVOCACY TRUST, LLC, as Special
Administrator and Personal Representative of
the Estate of Thomas Roy Rodabaugh, Deceased                                        PLAINTIFF

v.                                          No. 5:21-CV-05064

KIA CORPORATION, et al.                                                            DEFENDANTS

**OPINION AND ORDER**

   Before the Court are four motions from Defendants Kia Corporation and Kia America, Inc. ("Kia"). Those motions are a Motion for Summary Judgment (Doc. 78); a Motion for Partial Summary Judgment (Doc. 81); a Motion to Exclude Expert Kelly Kennett (Doc. 84); and a Motion to Exclude Expert Chris Caruso (Doc. 85). Plaintiff Advocacy Trust, LLC opposed each motion (Docs. 90–93). The Court has considered the motions, responses, replies, and accompanying briefs and statements of facts, including sealed exhibits. (Docs. 82–83, 86–89, 94, 95–96, 100). For the reasons set forth below, only Kia's motion (Doc. 81) for partial summary judgment will be GRANTED. The remaining motions (Docs. 78, 84, and 85) will be DENIED.

**I.  Background**

   This case arises from a fatal car accident that occurred in Bentonville, Arkansas in April 2020. (Doc. 82, ¶ 1). Thomas Rodabaugh was driving a 2017 Kia Soul north on N. Walton Boulevard with his wife, Christine Rodabaugh, in the front passenger seat. *Id.* ¶ 2. Jackson Tedford, no longer a party here (Doc. 61), attempted to make a left-hand turn onto N. Walton Boulevard, striking the Rodabaughs' Kia Soul in the process. *Id.* ¶¶ 3–4. Mr. Rodabaugh hit the steering wheel upon impact and died from his injuries. *Id.* ¶ 7. According to the Bentonville Police Department accident report, Mr. Rodabaugh was not wearing his seatbelt at the time of the

1

accident. (Doc. 82-4, p. 2). Mrs. Rodabaugh, who wore her seatbelt, walked away from the accident with minor injuries. (Doc. 82, ¶ 8).

Over a year and a half after the Rodabaughs' accident, Kia and the National Highway Traffic and Safety Administration issued a voluntary safety recall that covered the Rodabaughs' 2017 Soul. *Id.* ¶ 9. As Kia explains:

> Kia issued the recall due to variances in the manufacturing of the Supplemental Restraint System Control Module ("SRSCM") (also referred to as the Airbag Control Module ("ACU")). The manufacturing variances may cause contact between the SRSCM cover and the Electrically Erasable Programmable Read-Only Memory ("EEPROM") chip on the SRSCM's Printed Circuit Board ("PCB"). The contact may cause damage to the EEPROM's soldering joints resulting in an open circuit.

(Doc. 82, ¶ 10). Kia sent a letter Mrs. Rodabaugh notifying her of the recall. (Doc. 94-5). That letter mentions the airbag warning light might be illuminated because of a Diagnostic Trouble Code ("DTC") B1620. *Id.* at 1. The recall condition could lead to the B1620 code. *Id.* But the parties agree that many issues besides the recall condition could lead to a B1620 trouble code.[1] (Doc. 82, ¶ 12).

Before the January 2022 recall, Kia received two reports from its Korean market services team about 2019 Kia Sedonas with airbag warning lights activated by a B1620 code. (Doc. 82, ¶¶ 13–14). From October 2021 to January 2022, Kia collected warranty-returned Airbag Control Modules that had the B1620 code to investigate the code's cause. *Id.* ¶ 15. Kia determined the code was caused by contact between the SRSCM cover and the EEPROM chip. *Id.* When the cover and the chip made contact, the airbag warning light illuminated. *Id.* Kia decided to conduct

---

[1] The DTC can be properly referred to as B1620 or B162000. (Doc. 96, p. 4 n.1). For clarity, the Court will use B1620.

2

the recall after its investigation. *Id.* ¶ 17. The recall included the Rodabaughs' 2017 Kia Soul. (Doc. 94-5).

Advocacy Trust, as the administrator and personal representative of Mr. Rodabaugh's estate, sued Kia alleging wrongful-death and survivor actions. (Doc. 6). Advocacy Trust brings a host of claims, including negligence and strict products liability. *Id.* Advocacy Trust also seeks punitive damages. *Id.* Advocacy Trust relies in part on two experts to support its case. Advocacy Trust retained Kelly Kennett as an accident reconstruction and biomechanical engineering expert. (Doc. 84-2, p. 2).[2] Advocacy Trust also retained Chris Caruso to serve as an engineering expert on the issue of airbag deployment. (Doc. 89, p. 4). Kia now moves for summary judgment on all claims, partial summary judgment on the punitive damages claim, and to exclude the opinions of both experts.

## II. Legal Standard

On a summary judgment motion, the movant has the burden to show that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. Once the movant has met its burden, the non-movant must present specific facts showing a genuine dispute of material fact exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). For there to be a genuine dispute of material fact, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66–67 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "To survive a motion for summary judgment, the

---

[2] When a document is e-filed, the Electronic Case Filing system adds page numbers to a header at the top of the document. Except for depositions, which the Court will cite by deposition page and line number, all citations included in this Order reference the pages as numbered in that header, rather than any page numbers native to the document.

nonmoving party must substantiate her allegations with sufficient probative evidence that would permit a finding in her favor based on more than mere speculation, conjecture, or fantasy." *Clay v. Credit Bureau Enters., Inc.*, 754 F.3d 535, 539 (8th Cir. 2014) (cleaned up).

### III. Analysis

Kia moves to exclude both of Advocacy Trust's experts, Kelly Kennett and Chris Caruso, based on their testimony's reliability. Without those experts' testimony, Kia argues that summary judgment is proper because Advocacy Trust does not have evidence of causation. Finally, Kia argues that even if the claims move forward, summary judgment is proper on Advocacy Trust's claim for punitive damages. The Court will address each argument in turn.

#### A. Motions to Exclude

Kia moves to exclude both Mr. Kennett and Mr. Caruso. Kia challenges the reliability of the experts' opinions but does not challenge either of the experts' qualifications. An expert may testify if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Several general principles about the admissibility of expert evidence apply here. First, "'[t]he standard for judging evidentiary reliability of expert evidence is lower than the merits standard of correctness.'" *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 9 F.4th 768, 777 (8th Cir. 2021) (quoting *Kuhn v. Wyeth, Inc.*, 686 F.3d 618, 625 (8th Cir. 2012)). Second, "[a]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility." *Id.* (quoting *United States v. Coutentos*, 651 F.3d 809, 820 (8th

Cir. 2011)). Third, "rejection of expert testimony is the exception rather than the rule." *Robinson v. GEICO General Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (quotation omitted). And fourth, any "shaky but admissible evidence" can be addressed through "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *In re Bair Hugger*, 9 F.4th at 778 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)).

### 1. Kelly Kennett

Kia moves to exclude Mr. Kennett for two reasons. First, Kia argues Mr. Kennett does not support his opinion about whether the accident is an airbag-deployable event with the necessary scientific calculation, testing, or analysis. (Doc. 84, p. 3). Second, Kia argues Mr. Kennett's biomechanics opinions are not based on sufficient facts or data. *Id.* at 5. The Court does not agree with Kia on either front, so the Court will not exclude Mr. Kennett's testimony.

Kia faults Mr. Kennett for not calculating the Principal Direction of Force (PDOF) or delta-v of the subject vehicle. Mr. Kennett testified he did not think calculating the PDOF was necessary. *See* Doc. 93-3, 125:5–126:21.[3] Instead, Mr. Kennett used the barrier equivalent velocity ("BEV") to calculate the impact severity. Mr. Kennett calculated the BEV using "traditional crush energy methods" since the airbag control module did not have any event data from the accident. (Doc. 84-2, p. 9). Mr. Kennett describes this method as "the way we used to do it before we had event data records for everything." (Doc. 93-3, 109:1–10). Kia's critique of Mr. Kennett boils down to disagreeing with Mr. Kennett's methodology. But Kia has not shown that Mr. Kennett's methodology is unreliable. Kia's arguments relate to the weight and credibility of the testimony, so the Court will leave that analysis for a jury. *See In re Bair Hugger*, 9 F.4th at 777.

---

[3] Mr. Kennett also testified in his deposition that he calculated a delta-v. (Doc. 93-3, 129:6–16). Kia had the chance to depose Mr. Kennett about that calculation.

Kia's arguments about Mr. Kennett's biomechanics opinions are also better saved for a jury. Kia faults Mr. Kennett for not reviewing several documents, including the deposition of Mr. Rodabaugh's treating physician and Mr. Rodabaugh's medical records. (Doc. 84, p. 6). Mr. Kennett did, however, rely on other medical information, such as a Fire Department patient care record, Northwest Medical Center records, and the Benton County Coroner's report. (Doc. 84-2, p. 3). If Kia thinks that Mr. Kennett should have used other medical records, that is a disagreement about the weight of the evidence rather than admissibility. Kia is welcome to try to expose that "shaky but admissible evidence" via cross-examination or otherwise. *See In re Bair Hugger*, 9 F.4th at 778 (quoting *Daubert*, 509 U.S. at 589).

### 2. Chris Caruso

Kia moves to exclude Mr. Caruso for three reasons. First, Kia argues Mr. Caruso did not base his opinion on sufficient facts and data. (Doc. 89, p. 4). Second, Kia argues Mr. Caruso failed to reliably test his hypothesis and opinions. *Id.* at 9. Third, Kia argues Mr. Caruso will not assist the jury because his opinion is based on erroneous facts, speculation, and conjecture. *Id.* at 11. As with Mr. Kennett, Kia's arguments about Mr. Caruso go to the weight of the testimony rather than its admissibility. So, the Court will also not exclude Mr. Caruso's testimony.

Kia's first argument, that Mr. Caruso did not base his opinion on sufficient facts and data, more closely resembles an argument that Kia disagrees with the data Mr. Caruso used. For example, Kia attacks Mr. Caruso's understanding of the EEPROM chip, how the recall condition leads to airbag non-deployment, and if Kia should have issued a recall sooner. The first two disagreements are simply challenges to the factual basis for Mr. Caruso's opinion, which amounts to challenging the testimony's credibility. A jury will decide how much credibility to give Mr. Caruso's opinions. *See In re Bair Hugger*, 9 F.4th at 777. Kia's third attack, about how Mr.

6

Caruso used facts and data to say when a recall should have occurred, is rather mere disagreement with Mr. Caruso's opinion. As the reliability inquiry does not focus on the conclusions an expert generates, *see Daubert*, 509 U.S. at 595, the Court will not use Kia's disagreement with Mr. Caruso's opinion as a basis to exclude his testimony.

      Kia's second argument is that Mr. Caruso failed to reliably test his hypothesis and opinion. Kia is correct that one factor to determine reliability is "whether [a theory] can be (and has been) tested." *Daubert*, 509 U.S. at 593. But that testing requirement is not always necessary. *See Klingenberg v. Vulcan Ladder USA, LLC*, 936 F.3d 824, 829 (8th Cir. 2019). For example, a court does not abuse its discretion to admit expert testimony when the expert based his conclusion on "his experience and expertise in ladder investigations, general engineering principles, information from [the plaintiff] about the accident, and his examination of the damaged ladder, its design and specifications, competitors' ladders, and photos of the accident scene." *Id.* Substitute "ladder" for "vehicle", and the reasoning fits perfectly here. Mr. Caruso based his opinions on his experience "designing and developing crash sensors and occupant safety systems." (Doc. 85-5, p. 26). He also based his opinions on the damaged vehicle, photos of the accident scene, crash test reports, the EDR data from the vehicle, and recall documentation. *Id.* at 8. The Court finds that Mr. Caruso's testimony is reliable despite Mr. Caruso's lack of testing.

      Kia finally argues that Mr. Caruso's opinions are speculative and are "so fundamentally unsupported that [they] can offer no assistance to the jury." (Doc. 89, p. 12 (citing *Bonner v. ISP Technologies, Inc.*, 259 F.3d 924 (8th Cir. 2001)). The Court has already determined that Mr. Caruso's opinion was based on sufficient facts and data and Mr. Caruso's opinion is reliable despite any potential deficiency in testing. Because of this, the Court does not agree that Mr. Caruso's opinions are speculative or that they won't assist a jury. If Kia wants to challenge Mr.

7

Caruso's testimony, again, Kia can cross-examine Mr. Caruso and offer contradictory evidence to help the jury weigh Mr. Caruso's opinion.

The Rule 702 inquiry is flexible, and the factors should be adapted based on the demands of the case. *Klingenberg*, 936 F.3d at 829 (citing *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456–57 (8th Cir. 2012)). The Court has considered those factors here and is satisfied that both Mr. Kennett and Mr. Caruso's testimony is admissible. Kia's challenges more closely resemble challenges to the expert's credibility. The Court will leave that credibility determination to a jury. Therefore, Kia is not entitled to the exclusion of Mr. Kennett and Mr. Caruso's opinions.

### B. Motion for Summary Judgment

Kia moves for summary judgment based on Advocacy Trust's alleged failure to prove the causation element of its claim. (Doc. 80, p. 1). Kia focuses the bulk of its motion on Mr. Caruso's five alternative designs that Mr. Caruso states "would have deployed the frontal impact dual stage airbags and seat belt pretensioners in the subject collision." (Doc. 85-5, pp. 25–26). Kia misconstrues these alternative designs as "several possible causes of non-deployment." (Doc. 80, p. 7). The Court does not agree with Kia's interpretation of Mr. Caruso's report. Mr. Caruso opined that the alternative designs would have deployed the airbags. But that is not Mr. Caruso's sole opinion. Mr. Caruso also opines that "[t]he manufacturing defect and subsequent delayed recall of the defective SRSCM module" rendered the Kia Soul defective. (Doc. 85-5, p. 26).

Mr. Kennett and Mr. Caruso's opinions create a genuine issue of material fact on causation. As discussed above, the Court will not exclude Mr. Caurso's or Mr. Kennett's opinions. In addition to Mr. Caruso's opinion quoted in the previous paragraph, Mr. Kennett opined that if the airbag deployed, the airbag would have allowed Mr. Rodabaugh to enjoy "the traditional load distribution, ride-down, and acceleration attenuating benefits of the airbag." (Doc. 84-2, p. 11).

Mr. Kennett also concluded that those benefits would have "ameliorated the thoracic accelerations and deflections in the subject accident," and those benefits have been shown to exhibit low likelihood of serious injury and death. *Id.* After reviewing Advocacy Trust's expert reports, the Court is satisfied that there is a genuine dispute of material fact on causation. Because of this, Kia is not entitled to summary judgment on Advocacy Trust's claims.

### C. Punitive Damages

Arkansas sets the standard for punitive damages by statute. To recover punitive damages, Advocacy Trust must show Kia is liable for compensatory damages, and one or both of the following aggravating factors:

(1) [Kia] knew or ought to have known, in light of the surrounding circumstances, that [its] conduct would naturally and probably result in injury or damage and that [Kia] continued the conduct with malice or in reckless disregard of the consequences, from which malice may be inferred; or

(2) [Kia] intentionally pursued a course of conduct for the purpose of causing injury or damage.

Ark. Code Ann. § 16-55-206. Advocacy Trust must prove this by clear and convincing evidence. *Id.* § 16-55-207. Advocacy Trust does not argue Kia intentionally caused the Rodabaughs' injuries, so the Court will focus on factor one.

Before addressing the merits of Advocacy Trust's punitive damages claim, the Court must dispel the notion that dismissing punitive damages at the summary judgment stage is improper. Advocacy Trust argues that "punitive damages are not a cause of action that can, or should, be dismissed on summary judgment." (Doc. 91, p. 9 (citing *Carvin v. Ark. Power & Light Co.*, 1991 WL 540481, at *6 (W.D. Ark. Dec. 2, 1991)). Advocacy Trust is mistaken that punitive damages cannot be dismissed on summary judgment. In ruling on a motion for summary judgment, the court must "view the evidence presented through the prism of the substantive evidentiary burden."

9

*Anderson*, 477 U.S. at 254. That means "unless a reasonable jury could conclude by clear and convincing evidence" that Kia's actions meet the punitive damages standard, "summary judgment is proper." *Perry v. Steven Transp.*, 2012 WL 2805026, at *4 (E.D. Ark. July 9, 2012); *see also In re Aircraft Accident at Little Rock*, 351 F.3d 874 (8th Cir. 2003) (affirming summary judgment on punitive damages). Because the Court can properly consider the punitive damages claim on summary judgment, the Court turns to the merits.

Arkansas law disfavors and limits punitive damages. *In re Aircraft Accident at Little Rock*, 351 F.3d at 876. "[N]egligence alone, however gross," is not enough to sustain punitive damages. *Id.* at 877. As the Arkansas statute explains, not only must a plaintiff establish compensatory damages, but the plaintiff must also show the defendant knew or ought to have known its conduct would probably cause harm, and also that the defendant "continued the conduct with malice or in reckless disregard of the consequences, from which malice may be inferred." Ark. Code Ann. § 16-55-206.

For example, malicious or reckless conduct was shown when a tobacco company knew about harmful carcinogens in cigarettes, but untruthfully represented cigarettes as not unhealthy and not a cause of cancer, all while "suppress[ing] research into the harmful health consequences of cigarette smoking." *Boerner v. Brown & Williamson Tobacco Co.*, 394 F.3d 594, 601 (8th Cir. 2005). On the other hand, the Eighth Circuit has held punitive damages are not appropriate when defendants who were allegedly acting negligently "[were] actively making choices, and exhibiting some level of care" while trying to protect persons from a train or plane crash. *See In re Aircraft Accident at Little Rock*, 351 F.3d at 881–82; *Morris v. Union Pac. R.R.*, 373 F.3d 896, 904 (8th Cir. 2004).

Advocacy Trust focuses its claim for punitive damages on Kia's knowledge of the B1260 code three years before the accident. (Doc. 91, p. 6). Mr. Caruso, one of Advocacy Trust's experts, explained in his report that Kia's documents show the B1620 code was first diagnosed as early as May 2017, three years before the Rodabaughs' accident. (Doc. 91-3, p. 25). At that point, Mr. Caruso's position is that Kia "should have taken the time to diagnose the root cause of this fault and correct the deficiencies of the SRS system immediately." *Id.* Mr. Caruso admitted, however, that he does not know whether the B1620 code diagnosed in 2017 was due to the recall condition. (Doc. 91-4, p. 180:12). Indeed, the B1620 code could have been caused by one of the many other conditions that Advocacy Trust admits could lead to the B1620 code. *Id.*; *see also* Doc. 82, ¶ 12. Mr. Caruso assumed, knowing in hindsight a recall occurred, that the B1620 code in 2017 was caused by the recall condition. (Doc. 91-4, p. 179:12–15).

This evidence is insufficient to show by clear and convincing evidence that Kia acted maliciously or with reckless disregard of the consequences. First, Advocacy Trust does not point to any affirmative conduct of Kia's that showed Kia acted maliciously in refusing to investigate the B1620 code in 2017. As Advocacy Trust admits, there are many reasons for the B1620 code, not just the recall condition. (Doc. 82, ¶ 12). Second, Kia demonstrated that once it learned of the B1620 code illuminating the airbag warning light in 2021, Kia took steps to investigate the issue, which led to the eventual recall. Like in the Eighth Circuit cases where parties took steps to protect the safety of others in crashes, Kia took steps to protect others by conducting a recall.

The standard for punitive damages under Arkansas law is strict, and Advocacy Trust does not provide sufficient evidence to present that issue to a jury. Even if Advocacy Trust could prove compensatory damages and that Kia knew its conduct would naturally and probably lead to injury or damage, Advocacy Trust's claim for punitive damages would still fail. That is because

11

Advocacy Trust has not presented sufficient evidence that Kia acted with malice or in reckless disregard of the consequences of its conduct. Therefore, Kia is entitled to summary judgment on the punitive damages claim.

### IV. Conclusion

IT IS THEREFORE ORDERED that Kia's motion (Doc. 81) for partial summary judgment on Advocacy Trust's claim for punitive damages is GRANTED.

IT IS FURTHER ORDERED that Kia's motions for summary judgment (Doc. 78), to exclude expert Kelly Kennett (Doc. 84), and to exclude expert Chris Caruso (Doc. 85) are DENIED. Advocacy Trust's claims remain pending for trial.

IT IS SO ORDERED this 31st day of March, 2023.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE