IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| ADVOCACY TRUST, LLC, as Special Administrator and Personal Representative of the Estate of THOMAS ROY RODABAUGH, Deceased, <br><br> PLAINTIFFS, <br><br> V. <br><br> KIA MOTORS CORPORATION, <br><br> KIA MOTORS AMERICA, INC., <br><br> And JOHN DOES 1-3, <br><br> DEFENDANTS. | CASE NO.: **5:21-CV-5064** <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION *IN LIMINE***

COMES NOW, the Plaintiff, ADVOCACY TRUST, LLC, as Special Administrator and Personal Representative of the Estate of THOMAS ROY RODABAUGH, deceased, by and through the undersigned counsel, and for its Response to Defendants Kia America, Inc. and Kia Corporation's (hereinafter "Kia") Motion *in Limine*, states as follows, to-wit:

I.   **Response to Kia's Omnibus Motion *in Limine***

1. **Plaintiff does not intend to introduce evidence of other lawsuits against Kia but reserves the right to do so should Kia open the door.**

Defendants seek to prevent Plaintiffs bringing particular items of evidence to the Court's attention. Plaintiff does not anticipate eliciting testimony regarding the existence of other lawsuits but reserves the right to ask the Court to allow such evidence if Kia opens the door. For example, Plaintiff would be entitled to inquire as to previous lawsuits if Kia were to elicit

1

testimony or make argument through counsel that it has a "spotless record" or "has never been sued" or similar assertions.

Plaintiffs' concern with consenting to this subject was the vagueness of Kia's request. If Kia alleges that other vehicles subject to the same default code, defect, or recall as the Rodabaugh vehicle are "other claims," then Plaintiff incorporates its response to Kia's motions to exclude recall evidence below.

**2. Evidence of the Kia recall is admissible under Eighth Circuit precedent and is directly relevant to the claims being brought in this case.**

Kia cites other Circuit Courts in support of its contention that Rule 407 prohibits the introduction of recall evidence. That is not the controlling law in this Circuit. The Eighth Circuit has consistently and explicitly held that the exclusion rule for subsequent remedial measures does not apply when strict liability is alleged. "It has long been the law of this Circuit that Rule 407 does not preclude the introduction of evidence of subsequent remedial measures in a strict liability case. *See, e.g., Unterburger v. Snow Co.,* 630 F.2d 599, 603 (8th Cir.1980); *Robbins v. Farmers Union Grain Terminal Ass'n,* 552 F.2d 788, 793 (8th Cir.1977) ("Rule 407 is, by its terms, confined to cases involving negligence or other culpable conduct.")." Donahue v. Phillips Petroleum Co., 866 F.2d 1008, 1013 (8th Cir. 1989).

Once strict liability is alleged, the Court's only remaining consideration for admission is a Rule 403 balancing test. The Eighth Circuit has considered this as well and held that information regarding a recall is relevant to both claims for strict liability and negligence and that any prejudice of admitting recall evidence is reduced if it can be shown that the subject product was part of the recall. Farner v. Paccar, Inc., 562 F.2d 518, 527 (8th Cir. 1977). Essentially, the more certain that it is the product was part of the recall, the more probative and less prejudicial the introduction of recall evidence becomes.

Here, the Rodabaugh's vehicle was indisputably one of the recalled vehicles. This has been admitted by Kia and the Rodabaughs received a recall letter in the mail.[1] Beyond being subject to the recall, through examination of the vehicle, it was confirmed that the airbag control unit in the Rodabaugh's vehicle was in fact defective in the very manner described in the recall.[2]

This is a richly discussed issue in the Eighth Circuit and there are *zero* published cases that Plaintiff's counsel can locate where a recall was excluded from a case with a strict liability claim when the recall applied directly to that vehicle. The Kia recall information should be allowed in evidence in its entirety.

3. **Plaintiff currently does not plan to present evidence of any separate lawsuit, trial, claim, verdict, or incident outside of the relevant recall evidence. Plaintiff reserves the right to do so should a substantially similar incident come to light through the evidence presented at trial.**

Plaintiff consents that counsel and witnesses should not reference or introduce any evidence regarding any other trials, lawsuits, claims, verdicts, or incidents or recalls relating to said other trials, lawsuits, claims, or verdicts, unless such matters are substantially similar to the subject case. However, Kia seems to argue that such a prohibition would also preclude investigations, inspections, and evidence into this very recalled and defective airbag control unit.[3] If that is the case, Plaintiff incorporates its arguments contained in this Response that are directly relevant to the recall issue. At this time, Plaintiff has no evidence of separate lawsuits, claims, incidents, or investigations that are substantially similar to the one in question here. However, Plaintiff reserves the right to present such evidence should it come to light through the presentation of evidence at trial.

---

[1] Exhibit 1. Recall Letter.
[2] Exhibit 2. Scans of Defective Airbag Control Unit
[3] *See* Doc. 108 at p. 4.

4. **There is no Rule prohibiting the use of the word "safe" and Kia should not be permitted to dictate the verbiage or language used by Plaintiff's counsel, witnesses, or any other trial participant during arguments or the presentation of the evidence.**

Defendants' motion to prohibit Plaintiff from making any inquiry, eliciting testimony, referencing, or arguing that Kia had a duty to provide a "safer" of the "safest" product should be denied. The Plaintiff does not believe the citizens of Arkansas are so easily manipulated as to be swayed by magic words. Phrases like "safe", "safety", or "the safety of others" are not manipulative or prejudicial in any way. It is the duty of the Plaintiff to establish what is an appropriate standard for the automotive industry. In explaining to the jury what the applicable industry standard is, how it applies to the case, and what would and would not be considered violations of the standard, Plaintiff will utilize the testimony of qualified and experienced expert witnesses. These expert witnesses are entitled to use whatever vocabulary they wish to describe the standard to the jury and may include "safer" or "more safe" alternative designs. This issue was directly considered in previous cases in other Federal districts. The one most analogous to our situation is <u>Lofgren v. BNSF Ry. Co.</u> In that case the court stated "I conclude that evidence of safer methods is relevant and admissible in this case. BNSF's request for a blanket exclusion of "safer methods" evidence … is denied." No. 4:15-CV-0083-MWB-ARS, 2018 WL 2090818, at *4 (D.N.D. May 4, 2018).

Plaintiffs in product liability cases where negligence is alleged must prove that the defendants did not act as a reasonable company in its same situation. One piece of relevant evidence that goes to show reasonableness is the existence of alternative "safer" ways to make the product. Such evidence should be allowed and Kia should not be allowed to limit the way that Plaintiff presents its case.

5. **Plaintiff should be permitted to question experts in all manner allowed under the Rules. Kia's request to limit certain words is inappropriate.**

Plaintiff intends to question both parties' experts as allowed by the rules and case law. For example, Plaintiff does not intend to ask its experts how they feel about the fact that Kia's airbag and related components malfunctioned and did not protect Mr. Rodabaugh as it should have. However, Plaintiff does intend to ask questions that may elicit certain words such as belief, feel, think, and the list goes on. As an example, Plaintiff may ask an expert: "Based on your expertise in this field, what do you believe/feel/think should have occurred with the Kia Soul's airbag when it collided with another vehicle." This is an entirely appropriate question and follows all rules for questioning experts on their opinions. Plaintiff's questioning of its experts will be grounded on more than subjective belief and unsupported speculation and will abide with Fed. R. Evid. 702 and related case law.[4] Kia should again be prevented from dictating the words used by Plaintiff's counsel and witnesses during trial.

6. **References to Kia's place of incorporation and domicile will not stir racial prejudice amongst the jurors and is directly relevant to Plaintiff's claim of negligence.**

It is common knowledge that Kia is a foreign car manufacturer. The communication and systems linking Kia and Kia America are also central to the issue of Kia's negligence in this case. Plaintiff intends to make statements relating to Kia's place of incorporation, domicile, practices in its overseas Kia facility(ies), and related items. Plaintiff will not make references that promote racial or cultural bias and unfair prejudice based on Kia's citizenship or place of incorporation in Seoul, South Korea or Kia America's headquarters in Irvine, California. Kia's size, systems, practices, and communication between its entities are all directly relevant to the question of whether Kia responded in a reasonable manner to the defective and dangerous condition of its vehicles. Kia has put forward no evidence that the introduction of the location of

---

[4] See *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-90 (1993)

its headquarters would elicit racially biased or prejudicial reactions within the jury. The appropriate manner of handling such issues is a thorough jury selection and *voir dire* process. If Kia believes that the citizens of Arkansas have inherent biases against companies that were not founded here, then its counsel can address that with the jurors themselves instead of excluding a common-sense and widely known fact from evidence.

7. **"Reptile" tactics do not violate the Rules and Kia should not be permitted to dictate the arguments made or words used by Plaintiff's counsel in the presentation of the case.**

Kia files what has now become a "canned" standard Motion requesting the Court ban the "reptile" strategy. It seeks to dictate how Plaintiff's counsel practices law, including how to handle the various phases of trial for this case. Its Motion is primarily based upon a mischaracterization of a trial advocacy book titled Reptile: the 2009 Manual of the Plaintiff's Revolution. Jury trials in this Court are not governed by a trial advocacy book. Jury trials are governed by the Federal Rules of Evidence, Rules of Civil Procedure, and the Model Rules of Professional Conduct. Plaintiff's counsel will always conduct themselves in compliance with these rules and expect Defense counsel to do the same.

Directly concerning the Reptile strategy, it does not violate any Rules. Even the Reptile book's detractors admit that a goal of the Reptile authors was to undo years of reptilian messaging from defense attorneys who have led "the public to believe torts undermine the quality and availability of healthcare, threaten the local economy by endangering jobs, make products more expensive, and weaken research and development expenditures."[5]  In other words, scholars believe both Plaintiffs' and Defendants' attorneys use certain reptilian techniques.

---

[5] Howard, B. *et al.*, "A Field Guide to Southern California Snakes: Identifying and Catching Plaintiff's Reptile Theory in the Wild," *Verdict* (Association of Southern California Defense Counsel, vol. 3, 2013), at 11-12.

Defendants' motion seeks to preclude hypothetical questions. This court cannot act intelligently on Defendants' motion *in limine* on the basis of hypotheticals. Defendants offer only a few examples revolving around hypothetical harm. Defendants insinuate that Plaintiff's counsel intend to urge the jury to render a verdict against Defendants based on "fear" and violations of the Golden Rule. Nothing in the Reptile strategy, and no part of the Plaintiff's intentions, involves violating the Golden Rule and asking the jury to impermissibly place themselves in the shoes of any party. Instead, the Reptile strategy seeks to shift the views of a tort case from one endangering jobs and harming industry to one that uses safety as the reasonable course of conduct by which a litigant's behavior is judged.

In the end, Kia appears to believe Plaintiff's counsel will commit misconduct, and the jury pool will be comprised of especially gullible persons. The Plaintiff disagrees emphatically. Jurors are permitted to rely on their own common sense and experience when weighing the evidence presented.

In this case, Kia's negligence and defective vehicle caused Mr. Rodabaugh to suffer severe injuries and ultimately caused his death. The testimony of experts will detail the nature of the injuries caused by Defendants. Plaintiff's attorneys will fully abide by the rules of evidence, civil procedure, professional conduct, and other established principles during the trial of this case. These canons governing the conduct of attorneys are more than adequate to ensure the trial is conducted in a fair and impartial manner. Therefore, Kia's motion should be denied.

8. **Kia cannot exclude words used by Plaintiffs' counsel simply out of preference. "Responsibility" is not a manipulative or prejudicial term and its use should be allowed.**

Kia seeks to exclude the word "responsibility" from trial. Such a request is an inappropriate use of a motion *in limine*. "[A] motion *in limine* provides a vehicle for requesting guidance for

7

the trial court prior to trial regarding an evidentiary question which the court may provide, at its discretion, to aid the parties in formulating their trial strategy. … It enables the trial court, prior to trial to exclude anticipated evidence that would clearly be inadmissible for any purpose at trial. ... It is, essentially, a substitute for an evidentiary objection at trial." *Duran v. Hyundai Motor Am., Inc.*, 271 S.W.3d 178, 192 (Tenn. Ct. App. 2006) (internal citations omitted). It is used "'to exclude anticipated prejudicial evidence before the evidence is actually offered.'" *Pullum v. Robinette*, 174 S.W.3d 124, 135, n.11 (Tenn. Ct. App. 2004) (quoting *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984)). Restricting word choice is *not* evidence.

If Kia does not believe that denying fault and denying Plaintiff has suffered damages as a result of Kia's conduct is "refusing to take responsibility," then Kia's appropriate method of handling the issue is argument and presentation at trial. Kia should not be allowed to inappropriately dictate the very words used by Plaintiff's counsel and witnesses.

9. **Dr. Krauft will not testify that she "diagnosed" Christine Rodabaugh with depression, but should not be barred from saying the word as it relates to her properly formed and disclosed opinions.**

Plaintiff concedes that Dr. Krauft should not testify that as an expert in this case she "diagnosed" Mrs. Rodabaugh with depression. However, Dr. Krauft should be allowed to testify on the subject of depression and how it relates to her PTSD diagnosis of Mrs. Rodabaugh. Dr. Krauft was very clear in her deposition when she testified to this matter. She specifically said:

> Q. Is it your opinion in this case that Mrs. Rodabaugh suffers from depression?
> A. I think she suffers from PTSD. That's primary. And depression is kind of part of PTSD.
> Q. Do you believe that – have you diagnosed her separately as having depression?
> A. I have not.
> …
> Q. Okay. When you testify at trial in this case, are you going to tell a jury that Mrs. Rodabaugh has depression?
> A. I am going to say she told me she is irritable a lot; and irritability is a sign of depression. I would tell them that if somebody would ask me.

> Q. But you will not tell them that she has depression?
> A. It is – yeah, I will not say, "I diagnosed her with depression."
> Q. Okay.
> A. Someone else might. But I think the PTSD is more prominent.

Exhibit 3. Depo. V. Krauft. P. 136-138, L. 25, 1-6, 11-20.

Depression symptoms and PTSD are inextricably intertwined. Dr. Krauft is a qualified expert to testify about the emotional and psychological suffering of Christine Rodabaugh. She should be permitted to testify to the full extent of her opinions.

### 10. Freedom of the press should not be infringed absent a substantial justification.

Absent an overriding interest articulated in findings, the trial of a criminal case must be open to the public. Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 581, 100 S. Ct. 2814, 2829–30, 65 L. Ed. 2d 973 (1980). The same holds true for a civil case. The right to attend trials is implicit in the guarantees of the First Amendment; without the freedom to attend such trials, which people have exercised for centuries, important aspects of freedom of speech and "of the press could be eviscerated." *Id.* at 580, 2829 citing *Branzburg*, 408 U.S., at 681, 92 S.Ct., at 2656. Kia's alleged interest in protecting its trade secrets, business interests, interest in protecting itself against competitors and future claimants are not sufficient to infringe on the freedom of the press. Kia's request to exclude the press from trial should be denied.

### 11. It is impractical, sometimes impossible, and against the interests of justice to require prior approval from opposing counsel before the use of every demonstrative aid.

Kia's request for 24-hour advanced notice of all visual aids is not supported by the Rules or controlling case law. The Federal Rules of Civil Procedure and the Federal Rules of Evidence have no restriction or requirement on visual aid disclosure prior to trial. While Kia is correct that the Court has broad discretion when it comes to allowing or denying visual aids, it is notable that

9

Kia cited no support for their contention that visual aids should be disclosed 24-hours prior to use. That is because no such support or published precedent exists.

The Eighth Circuit has examined this issue in United States v. Crockett. In that case, the court considered the use of non-disclosed visual aids and visual aids that were created during the trial. The court stated that because visual aids "need not be admitted into evidence" the required disclosures and protection for evidence is alleviated and it is fine to create visual aids live during trial Crockett. 49 F.3d 1357, 1361 (8th Cir. 1995). The Court directly addressed the issue of undisclosed visual aids by stating, "Kelly apparently did not give defense counsel advance notice of the intended use of transparencies during closing argument. That did not concern Judge Vietor and probably would not concern most trial judges." *Id.* at 1361.

The Rules, the Local Rules, and the Court's Scheduling Order require disclosure of all exhibits and evidence. That is because the bar to chin for admissible evidence is much higher than the bar for a visual aid. Despite Kia's moniker of "demonstrative evidence," visual aids are not evidence. Visual aids accompany the evidence to help with the jury's understanding. Limiting the way that a case can be presented visually by requiring prior disclosure would be overwhelmingly prejudicial to the Plaintiff and its right to present its case.

Kia's request is impractical in that it requires every visual aid or demonstrative aid to be chosen a full day before presentation at trial. Often, there is no way to know which visual aids will or will not be used until the testimony at trial is elicited. Other times, visual aids, like those made on butcher pads and flip charts, are literally created in front of the jury. There is no way to pre-disclose that type of visual aid.

Finally, Kia's request is impractical as it is impossible to define what constitutes a "visual aid." This could range to anything from an enlargement of a document already in evidence to a

10

PowerPoint slide with deposition testimony to a simple picture. Kia seems to request the right to approve anything that may or may not be shown to the jury at any point during trial. Such a broad-brush disclosure requirement would violate the Plaintiff's work product privilege and place inappropriate handcuffs on the case presentation.

All exhibits have been disclosed. All witnesses have been disclosed. Every witness offered by Plaintiff has even been deposed. No form of trial by ambush or surprise can occur by allowing the Parties to create and use visual aids as permitted by the Rules. Kia's request to be given complete control of Plaintiff's visual presentation of the case should be denied.

**12. Plaintiff will not use "cartoons" on visual aids but should be allowed to use visual aids as allowed under the Rules.**

The trial court is granted wide discretion in determining whether to allow the use of a demonstrative aid. Miller v. Hometown Propane Gas, Inc., 86 Ark. App. 189, 197, 167 S.W.3d 172, 178 (2004). Plaintiff does not intend to use demonstrative aids of cartoon children or people in danger and/or "doctor" evidentiary items with cartoon children or people in danger to the jury. However, Plaintiff does intend to introduce photographs, demonstrative/visual aids, and/or elicit testimony relating to the fact that the 2017 Kia Soul was a danger to Mr. Rodabaugh and others on the road due to its defective airbag and related components. Additionally, Plaintiff does intend to emphasize certain documents and/or parts of documents by redlining, highlighting, enlarging, and otherwise emphasizing certain parts, and other similar aids, all of which is permitted by the Rules. Any alleged prejudice concerning the use of visual aids is substantially outweighed by its probative value.

**13. Kia should not be permitted to dictate the order and manner of the presentation of evidence by Plaintiff.**

Kia is requesting the right to dictate the order and manner by which Plaintiff must present evidence in its case in chief. This request flies in the face of judicial norms and the applicable Rules. Kia specifically requests that Plaintiff be forced to incorporate designations of depositions that are put forth by Kia. Kia cites no case law to support such a requirement. The Plaintiffs have the burden of proof and "as the party with the burden of proof, is entitled to open the evidence and introduce all his or her evidence in chief." § 22:3. Effect of burden of proof, 3 Trial Handbook for Arkansas Lawyers § 22:3 (2022-2023 ed.). There is zero support for forcing Plaintiffs to incorporate evidence offered by Defendants into its case in chief. Such a request should not be permitted here.

Both Parties have disclosed deposition designations, counter designations, and have been given the opportunity to object to the designations. Kia's request to have control over the deposition testimony presented in Plaintiffs' case in chief is not appropriate. Kia can present its own counter-designations if it believes that other clips should be played outside of those designated and played by Plaintiff.

### 14. Plaintiffs' experts Kelly Kennett and Chris Caruso have already been admitted to testify by this Court.

This Court has already ruled that it is "satisfied that both Mr. Kennett and Mr. Caruso's testimony is admissible."[6] Mr. Caruso and Mr. Kennett both surpass the Fed. R. Evid. 702 requirements, as their opinions are reliable and are based on sufficient facts and data, their opinions have been tested, and they will assist the factfinder. Plaintiff incorporates all arguments concerning the admissibility of the experts' testimony that has been previously presented to the Court.

---

[6] *See* Doc. 103 at pp. 5-7. Also, Pursuant to Fed. R. Civ. P. 10(c), Plaintiff incorporates by reference its Response to Kia's Motions to Exclude Plaintiff's Expert Kelly Kennett (Doc. 93) and Chris Caruso (Doc. 92).

### 15. Plaintiffs should be permitted to present all relevant and probative evidence concerning the recall.

Kia's request for a "limitation" is actually a request for exclusion of certain evidence related to the recall. Kia cites no precedent where recall evidence was limited as they request. Their request would remove all context of the recall and the defect in question and only serve to confuse the jury. Plaintiff has already addressed the admissibility of the recall evidence above, so that will not be repeated.

Specifically in regard to the documents Kia seeks to exclude; the "recall letter" was written by Kia and sent out to every customer that owned a vehicle subject to the recall, including the Rodabaughs. The letter briefly explains the defect and the related safety issues. It is directly relevant to the strict liability defective product claim.

The list of recalled vehicles is a list, produced by Kia, that shows all vehicles subject to the recall that had the same error code as the vehicle driven by the Rodabaughs. Kia attempts to confuse the issue by stating that these other vehicles with the same airbag control unit (ACU) as the Rodabaugh vehicle, with the same error code as the Rodabaugh vehicle, defective airbags like the Rodabaugh vehicle, and that were subject to the same recall as the Rodabaugh vehicle are somehow not "substantially similar" to the defect in the Rodabaugh vehicle.

Kia admitted through corporate representative testimony that the recall was directly related to the B1620 error code.[7] They also admit that all B1620 codes mean "there is an internal damage within the ACU."[8] Every vehicle subject to the recall and displaying that error code is substantially similar to the Rodabaugh vehicle.

---

[7] Exhibit 4. Depo. A. Dow, P. 25 L. 1-10.
[8] Exhibit 5. Depo. K. Lee, P. 22 L. 13-17

The recalled vehicle list shows that Kia knew there were error issues with the ACU in question since at least 2014, chose to still use that ACU in the 2017 Kia Soul, and then knew about defective ACUs in the 2017 Kia Souls as early as February of 2017. Specifically, Kia knew that 3,027 of their vehicles had come back with defective ACUs prior to the date of the accident where Mr. Rodabaugh was killed due to a defective ACU.[9] This is pertinent evidence to the question of negligence and whether Kia's response to these defective airbags was reasonable.

The recall evidence is admissible under Eighth Circuit precedent and Kia should not be permitted to piecemeal exclude information that forms the entire context of the defective vehicle.

    II.    **Response to Kia's Motion in Limine to Admit Seatbelt Evidence and Preclude any Argument or Undisclosed Evidence that Mr. Rodabaugh was Wearing his Seatbelt**

Out of the several different data downloads of the subject Kia Soul vehicle, there has never been any data concerning crash incidents or seat belt use that was recoverable.[10] All that has shown up when both parties' experts have attempted to download the EDR data is:

&lt; Event 1 &gt;

There is no recorded event.

&lt; Event 2 &gt;

There is no recorded event.

That means that there is no direct data saying that Mr. Rodabaugh was or was not wearing his seatbelt. Experts have examined the vehicles and opined on the issue, but even experts do not have 100% certainty of a fact in question like this. Chrstine Rodabaugh, the only person actually in the vehicle with Mr. Rodabaugh, said in her deposition that Mr. Rodabaugh would "almost always" wear his seat belt and that she "can't remember" if he was wearing it at the time of the

---

[9] Exhibit 6. Recall vehicle list.
[10] Exhibit 7, RODA700271-700276 EDR KIA AIRBAG SYSTEM REPORT

accident, but that she does not remember hearing any "dings" or seeing any warning lights about a seat belt being unbuckled.[11] Whether or not Mr. Rodabaugh was wearing a seat belt is a question of fact for the jury to decide and should not be ruled upon as a stipulation or an affirmative statement that is something that was known for certain.

## V.  CONCLUSION

WHEREFORE, premises considered, Plaintiff respectfully requests this Court DENY Kia's Motion *in Limine*, and for all other relief the Court deems just and proper.

Dated this 1st day of May, 2023.

Respectfully submitted,

By: /s/ Geoff Hamby
Sach D. Oliver, AR Bar No.: 2006251
Frank H. Bailey, AR Bar No. 74004
T. Ryan Scott, AR Bar No. 2008161
Geoff Hamby, AR Bar No. 2015171
Samuel W. Mason, AR Bar No. 2019143
BAILEY & OLIVER LAW FIRM
3606 West Southern Hills Blvd.
Rogers, AR 72758
Phone: (479) 202-5200
Fax: (479) 202-5605
soliver@baileyoliverlawfirm.com
fbailey@baileyoliverlawfirm.com
rscott@baileyoliverlawfirm.com
ghamby@baileyoliverlawfirm.com
smason@baileyoliverlawfirm.com

and

John F. Romano, Florida Bar No. 175700
Jessica Latour, Florida Bar No. 109074
ROMANO LAW GROUP
Post Office Box 21349
West Palm Beach, FL   33416-1349
(561) 533-6700 Phone
(561) 533-1285 Fax

---

[11] Exhibit 8. Depo. C. Rodabaugh. P. 126, 183, 184; L. 7-8, 24-25, 1-17.

15

        john@romanolawgroup.com
        jessica@romanolawgroup.com

*Attorneys for the Plaintiff*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on this 1st day of May, 2023, a true and correct copy of the above and foregoing was electronically filed with the Clerk of this Court using the CM/ECF system, which shall send notification of such filing to all parties.

        /s/ Geoff Hamby
        Geoff Hamby